JUDGE MARRERO

# 18 CV 7382

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC; PEARSON EDUCATION, INC.; and BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC,<br><br>          Plaintiffs,<br><br>   v.<br><br>DOE 1 D/B/A BINGHFRAN, GOLDENRAIN2855, 2010SEVENSEAS, ND953570, and SLVR17; DOE 2 D/B/A GRIGORINAYMA-0 and NAYMANBUY; DOE 3 D/B/A IACCESSORYDEALS; DOE 4 D/B/A INTELIMIN_9; DOE 5 D/B/A KOROUSH31; DOE 6 D/B/A OPENBOXLIQUIDATORS; KARINA ABDALA; ING CREATIONS AND ENTERPRISES LLC; BUYBACK EXPRESS INC.; ALLAN WALTER GRIESE; LINDA GYORKREE KHWA; TIM KREJDOVSKY; BINH THAI NGUYEN; SERGEI ORLOV; VIKTORIA ORLOVA (A/K/A VICTORIA RONK); ALEJANDRO MORALES PEREZ; SMART PURCHASE LLC; MICHAEL RUBIO; MIRIAM TURNER (A/K/A MIRIAM GARNER); WIZE DEALZ, LLC; and JEAN M. VILSAINT,<br><br>          Defendants. | Civil Action No. _____<br><br><br>**OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR:**<br><br>**1) TEMPORARY RESTRAINING ORDER;**<br>**2) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE;**<br>**3) ORDER AUTHORIZING EXPEDITED DISCOVERY; AND**<br>**4) ORDER AUTHORIZING ALTERNATIVE SERVICE** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 5

    A.  Plaintiffs' Businesses and Their Copyrighted Works ............................................ 5

    B.  The Online Marketplaces ....................................................................................... 6

    C.  Defendants' Illegal Online Business ..................................................................... 9

ARGUMENT ...................................................................................................................... 16

    I.      THIS COURT HAS PERSONAL JURISDICTION ................................................ 16

    A.  Section 302(a)(1) ................................................................................................. 17

    B.  Section 302 (a)(3) ................................................................................................ 19

    C.  Due Process ......................................................................................................... 21

    II.    DEFENDANTS MEET THE STANDARD FOR A TEMPORARY
          RESTRAINING ORDER AND PRELIMINARY INJUNCTION ......................... 23

    A.  Plaintiffs are Likely to Succeed on All of Their Claims Against Defendants ....... 25

        1.  Copyright Infringement ................................................................................ 25

        2.  Trademark Counterfeiting .............................................................................. 26

    B.  Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant
        Immediate Relief .................................................................................................. 27

    C.  Plaintiffs Satisfy the Remaining Two Equitable Factors ..................................... 29

    III.   PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE
          TRANSFER OF DEFENDANTS' ASSETS ......................................................... 30

    A.  The Court Possesses Ample Authority Under the Federal Rules and Its
        Inherent Equitable Powers to Attach Defendants' Assets .................................... 30

    B.  The Court Also Possesses Authority Under New York Law to Attach the
        Defendants' Assets .............................................................................................. 34

i

      C. *Ex Parte* Relief Is Warranted................................................................36

      D. The Court Should Require No Bond or, in the Alternative, a Minimal Bond.......37

IV.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY............................38

V.    ALTERNATE SERVICE BY ELECTRONIC MEANS IS
APPROPRIATE HERE ................................................................................42

      A. CPLR § 308 Authorizes Alternate Service on Individuals in the U.S. .................43

      B. Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on
Individuals in a Foreign Country .......................................................43

          1. Service of Process by Email is Not Prohibited by International
Agreement .................................................................................45

          2. Service of Process by Email is Reasonably Calculated to Provide
Notice to Defendants .................................................................45

CONCLUSION.........................................................................................47

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005)......................................26

*A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004 (9th. Cir. 2001)...........................................25

*Adelphia Comm'ns Corp. v. Rigas,* No. 02-Civ.-8495 (GBD), 2003 WL 21297258, 2003 U.S. Dist. LEXIS 9349 (S.D.N.Y. June 4, 2003) ...............................................................32

*Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L.*, 910 N.Y.S.2d 418 (N.Y. App. Div. 2010)................................................................43

*Algonquin Power Corp., Inc. v. Trafalgar Power Inc.,* No. 5:00-CV-1246 (NPM/DEP), 2000 WL 33963085, 2000 U.S. Dist. LEXIS 20331 (N.D.N.Y. Nov. 8, 2000)..........................32

*Arista Records LLC v. Doe,* 604 F.3d 110 (2d Cir. 2010).....................................................25, 39

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.,* 480 U.S. 102 (1987) ................22

*Ayyash v. Bank Al-Madina,* 233 F.R.D. 325 (S.D.N.Y. 2005) ...............................................35, 38

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194 (2d Cir. 1990)................................16

*Benham Jewelry Corp. v. Aron Basha Corp.,* No. 97-Civ.-3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957 (S.D.N.Y. Oct. 14, 1997)............................................................39

*Bomb First Prods., LLC v. Hustla, Inc.,* No. 651753/2012, 2014 N.Y. Misc. LEXIS 5928 (N.Y. Sup. Ct. June 24, 2014)................................................................43

*Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245 (2d Cir. 1999)................................32

*Broad. Music, Inc. v. PAMDH Enters., Inc.,* No. 13-Civ.-2255 (KMW), 2014 WL 2781846, 2014 U.S. Dist. LEXIS 84409 (S.D.N.Y. June 19, 2014)...........................................28

*Broadfoot v. Diaz,* 245 B.R. 713 (Bankr. N.D. Ga. 2000) ...................................................45, 47

*Burberry Ltd. v. Euro Moda, Inc.,* No. 08-Civ.-5781 (CM), 2009 WL 1675080, 2009 U.S. Dist. LEXIS 53250 (S.D.N.Y. June 10, 2009)............................................................27

*Capitol Records, LLC v. VideoEgg, Inc.,* 611 F. Supp. 2d 349 (S.D.N.Y. 2009)........................20

*Cengage Learning, Inc. v. Doe 1-8,* No. 1:18-cv-403-RJS, (Jan. 17, 2018) ...........................2, 23

## TABLE OF AUTHORITIES
(Continued)

### <u>CASES</u>

*Centrifugal Force, Inc. v. Softnet Commun., Inc.,* 08 Civ. 5463 (CM) (GWG), 2009 WL 1059647, 2009 U.S. Dist. LEXIS 37084, (S.D.N.Y. April 17, 2009) .........................................19

*Chew v. Dietrich,* 143 F. 3d 24 (2d Cir. 1998) ..........................................................................22

*Chloe v. Queen Bee of Beverly Hills,* 616 F.3d 158 (2d Cir. 2010).......... 16, 17, 18, 19, 21, 22, 23

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30 (2d Cir. 2010) ....................................................................................................24

*Complex Sys., Inc. v. ABN Amro Bank N.V.,* No. 08-Civ.-7497 (KBF), 2014 WL 1883474, 2014 U.S. Dist. LEXIS 64467 (S.D.N.Y. May 9, 2014)..............................................................28

*Considar, Inc. v. Redi Corp., Establishment,* 238 A.D.2d 111, 655 N.Y.S.2d 40 (N.Y. App. Div. 1997)...............................................................................................................34

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55 (2d Cir. 1985) .......................................16

*Datatech Enters. LLC v. FF Magnat Ltd.,* No. C 12-04500 CRB, 2012 WL 4068624, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sept. 14, 2012).........................................................31

*De Beers Consol. Mines v. United States*, 325 U.S. 212 (1945)..................................................32

*Dell Inc. v. BelgiumDomains, LLC,* No. 07-22674 CIV-JORDAN, 2007 WL 6862341, 2007 U.S. Dist. LEXIS 98651 (S.D. Fla. Nov. 21, 2007) ............................................................41

*DeWitt Stern Group, Inc. v. Eisenberg,* No. 13-Civ.-3060 (RWS), 2013 WL 2420835, 2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013)..............................................................37

*Digital Sin, Inc. v. John Does 1-176,* 279 F.R.D. 239 (S.D.N.Y. 2012).......................................38

*Doctor's Assocs. v. Distajo,* 107 F.3d 126 (2d Cir. 1997) ..........................................................37

*Doctor's Assocs. v. Stuart,* 85 F.3d 975 (2d Cir. 1996) ..............................................................37

*Elcometer, Inc. v. TQC-USA, Inc.,* No. 12-cv-14628, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874 (E.D. Mich. Feb. 14, 2013) ...................................................................46

*Elite Licensing, Inc. v. Thomas Plastics, Inc.,* 250 F. Supp. 2d 372 (S.D.N.Y. 2003) ................41

*Elsevier, Inc. v. Does 1-10,* No. 16-Civ.-1245 (RA), (S.D.N.Y. Feb. 8, 2016)............................33

## TABLE OF AUTHORITIES
(Continued)

### CASES

*Elsevier, Inc. v. Does 1-20,* No. 1:17-cv-6225-JGK, (S.D.N.Y. Aug. 18, 2017) ....................2, 23

*EnviroCare Techs., LLC v. Simanovsky,* No. 11-CV-3458 (JS)(ETB), 2012 WL
2001443, 2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ......................................18, 19

*Experience Hendrix, LLC v. Chalpin,* 461 F. Supp. 2d 165 (S.D.N.Y. 2006) ............................32

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340 (1991) .................................................25

*Fendi Adele S.R.L. v. Filene's Basement, Inc.,* 696 F. Supp. 2d 368 (S.D.N.Y. 2010)..........26, 27

*FTC v. PCCare247 Inc.,* No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013
U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) ...............................................................44, 46

*Grand v. Schwarz,* No. 15-cv-8779, 2016 WL 2733133, 2016 U.S. Dist. LEXIS
61606 (S.D.N.Y. May 10, 2016)................................................................................................20

*Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F. Supp. 428
(S.D.N.Y. 1989).........................................................................................................................36

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999)......31, 32

*Gucci Am., Inc. v. Bank of China,* 768 F.3d 122 (2d Cir. 2014)................................................32

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55 (2d Cir. 1985) ......................................16

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.,* 826 F. Supp. 2d 619 (S.D.N.Y. 2011).......28

*Hypnotic Hats, Ltd. v. Wintermantel Enters.,*2016 WL 7451306, 2016 U.S. Dist.
LEXIS 178796 (S.D.N.Y. Dec. 27, 2016)..................................................................................18

*In re Comverse Tech., Inc.,* No. 06-CV-1849 (NGG) (RER), 2006 WL 2568461, 2006 U.S.
Dist. LEXIS 62227 (E.D.N.Y. Aug. 31, 2006)..........................................................................32

*In re Feit & Drexler, Inc.,* 760 F.2d 406 (2d Cir. 1985) ............................................................31

*Int'l Diamond Importers, Inc. v. Med Art, Inc.,* No. 15-cv-4045, 2017 WL 2839640, 2017 U.S.
Dist. LEXIS 102257 (S.D.N.Y. June 29, 2017)..........................................................................20

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945)...................................................................21

**TABLE OF AUTHORITIES**
(Continued)

<u>**CASES**</u>

*ITC Entm't, Ltd. v. Nelson Film Partners,* 714 F.2d 217 (2d Cir. 1983) .................................... 35

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,*
306 F. Supp. 2d 482 (S.D.N.Y. 2004) ......................................................................... 36

*Laboratorios Rivasm, SRL v. Ugly & Beauty, Inc.,* No. 11-Civ.-5980 (RA) (JLC), 2013 WL
5977440, 2013 U.S. Dist. LEXIS 161188 (S.D.N.Y. Nov. 12, 2013) ................................. 29, 30

*Lewis v. Madej,* No. 15-cv-2676, 2015 WL 6442255, 2015 U.S. Dist. LEXIS
144384 (S.D.N.Y. Oct. 23, 2015) ............................................................................ 20, 21

*Libancell S.A.L. v. Republic of Leb.,* No. 06-Civ.-2765 (HB), 2006 WL 1321328,
2006 U.S. Dist. LEXIS 29442 (S.D.N.Y. May 16, 2006) ................................................. 37

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.,* No. 15 Civ. 8459, 2016 WL 3748480,
12016 U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) ................................................. 17, 18

*Lions Gate Films, Inc. v. Doe,* No. 2:14-cv-6033 (MMM), 2014 WL 3895240,
2014 U.S. Dist. LEXIS 110032 (C.D. Cal. Aug. 18, 2014) .............................................. 31

*Living Scriptures, Inc. v. Doe,* No. 1:10-cv-0182 (DB), 2010 WL 4687679,
2010 U.S. Dist. LEXIS 119968 (D. Utah Nov. 10, 2010) ................................................ 39

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,* 378 F. Supp. 2d 448 (S.D.N.Y. 2005) ............ 27

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106 (S.D.N.Y. 2010) ..... 44

*Mason Tenders Dist. Council Pension Fund v. Messera,* No. 95-Civ.-9341 (RWS),
1997 WL 223077, 1997 U.S. Dist. LEXIS 5931 (S.D.N.Y. May 1, 1997) ........................... 30, 31

*McCluskey v. Belfor High Sch.,* No. 2:09-14345, 2010 WL 2696599,
2010 U.S. Dist. LEXIS 62608 (E.D. Mich. June 24, 2010) .............................................. 46

*McGraw-Hill Educ. Holdings, LLC. v.* Does 1-10, No. 1:17-cv-6224-RJS
(S.D.N.Y. Aug. 21, 2017) ...................................................................................... 2, 23

*McGraw-Hill Educ. Holdings, LLC. v.* Turcios, No. 1:17-cv-6222-GHW,
(S.D.N.Y. Aug. 18, 2017) ...................................................................................... 2, 23

*McGraw-Hill Educ. Holdings, LLC. v. Mathrani,* No. 1:16-cv-8530-WHP, 2017 WL 6343627,
2017 U.S. LEXIS, (S.D.N.Y. Dec. 12, 2017) .............................................................. 18, 19

vi

# TABLE OF AUTHORITIES
### (Continued)

## **CASES**

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.,* 375 F. Supp. 2d 252 (S.D.N.Y. 2005) .... 20, 21

*Microsoft Corp. v. Jun Yan,* No. 3:10-cv-00162 (VLB), 2010 U.S. Dist. LEXIS 14934
(D. Conn. Feb. 18, 2010) ..................................................................................................33

*Motorola, Inc. v. Abeckaser,* No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833,
2009 U.S. Dist. LEXIS 40660 (E.D.N.Y. May 14, 2009) ............................................32

*North Face Apparel Corp. v. Moler,* No. 12-Civ.-6688 (JGK) (GWG), 2015 WL 4385626,
2015 U.S. Dist. LEXIS 93133 (S.D.N.Y. July 16, 2015) .............................................29

*Pearson Educ., Inc. v. Does 1-16,* No. 1:18-cv-0402-DLC, (Jan. 17, 2018) ..........................2, 23

*Pearson Education, Inc. v. Gupta,* No. 1:16-cv-04253 (LLS), (S.D.N.Y. June 8, 2016)... 2, 23, 24

*Pearson Educ., Inc. v. Heliosbooks, Inc., et al.,* No. 1:17-cv-203-DAB,
(S.D.N.Y. Jan. 17, 2017) ......................................................................... 2, 23, 24, 36

*Philip Morris USA, Inc. v. Veles Ltd.,* No. 06 CV 2988 (GBD), 2007 WL 725412,
2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 13, 2007) ..............................44, 45, 46

*Pod-Ners, LLC v. N. Feed & Bean of Lucerne LLC,* 204 F.R.D. 675 (D. Colo. 2002) ...............40

*Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir. 1961) .......................................26

*Popular Enters., LLC v. Webcom Media Grp., Inc.,* 225 F.R.D. 560 (E.D. Tenn. 2004) .............46

*Prediction Co. v. Rajgarhia,* No. 09 Civ. 7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist.
LEXIS 26536 (S.D.N.Y. Mar. 22, 2010) .....................................................................45

*Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC,* 587 F. Supp. 2d 548
(S.D.N.Y. 2008) .............................................................................................................31

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.,*
144 F. Supp. 2d 241 (S.D.N.Y. 2001) .............................................................. 30, 32, 34

*Republic of Philippines v. Marcos,* 806 F.2d 344 (2d Cir. 1986) ..............................................30

*Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.,*
858 F. Supp. 1268 (S.D.N.Y. 1994) ..............................................................................41

## TABLE OF AUTHORITIES
(Continued)

## <u>CASES</u>

*Rio Props., Inc. v. Rio Int'l Interling,* 284 F.3d 1007 (9th Cir. 2002) ................................... 44, 45

*Rogers v. eColor Studio,* No. 11-CV-4493 (ARR) (RER), 2013 WL 752256, 2013 U.S. Dist. LEXIS 28332 (E.D.N.Y. Feb. 7, 2013*)* ............................................................ 20

*RSM Prod. Corp. v. Fridman,* No. 06 Civ. 11512 (RDLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713 (May 24, 2007*)* ......................................................................... 44

*Safadjou v. Mohammadi*, 964 N.Y.S.2d 801 (N.Y. App. Div. 2013) .......................................... 43

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ................................................................ 24, 28

*Savage Universal Corp. V. Grazier Constr., Inc*., 04 Civ. 1089 (GEL), 2004 WL 1824102, 2004 Dist. LEXIS 16088, (S.D.N.Y. Aug. 13, 2004) ........................................................................ 21

*Sea Carriers Corp. v. Empire Programs, Inc.*, No. 04-Civ.-7395 (RWS), 2006 WL 3354139, 2006 U.S. Dist. LEXIS 83843 (S.D.N.Y. Nov. 20, 2006) .......................................... 32

*Serio v. Black, Davis & Shue Agency, Inc.,* No. 05-Civ.-15 (MHD), 2005 WL 3642217, 2005 U.S. Dist. LEXIS 39018 (S.D.N.Y. Dec. 30, 2005) ..................................................... 33

*Signal Capital Corp. v. Frank,* 895 F. Supp. 62 (S.D.N.Y.1995) ................................................ 32

*Snyder v. Energy, Inc.*, 857 N.Y.S.2d 442 (N.Y. Civ. Ct. 2007) .................................................. 43

*Stern v. Cosby,* 246 F.R.D. 453 (S.D.N.Y. 2007) .................................................................. 38, 39
*Time, Inc. v. Petersen Publ'g Co.,* 173 F.3d 113 (2d Cir. 1999) ................................................ 26

*TracFone Wireless, Inc. v. Holden Prop. Servs., LLC,* 299 F.R.D. 692 (S.D. Fla. 2014) ........... 41

*Twentieth Century Fox Film Corp. v. MOW Trading Corp.*, 749 F. Supp. 473 (S.D.N.Y. 1990) .................................................................................................. 40, 41

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.*, No. 03-Civ.-8909 (RJH), 2003 WL 22889738, 2003 U.S. Dist. LEXIS 21992 (S.D.N.Y. Dec. 8, 2003*)* ........................... 37

*United States ex rel. Barko v. Halliburton Co.,* 952 F. Supp. 2d 108 (D.D.C. 2013) .................. 44

*Verragio, Ltd. v. SK Diamonds*, No. 1:16-cv-6931 (KBF), 2017 WL 1750451, 2017 U.S. Dist. LEXIS 68422 (S.D.N.Y. May 4, 2017) .......................................................................... 22

## TABLE OF AUTHORITIES
(Continued)

### CASES

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2003) ........................................................24

*Warner Bros. Records, Inc. v. Payne,* No. W-06-CA-051, 2006 WL 2844415,
2006 U.S. Dist. LEXIS 65765 (W.D. Tex. July 17, 2006) ..........................................................40

*Westchester Legal Services, Inc. v. County of Westchester,* 607 F. Supp. 1379
(S.D.N.Y. 1985) ..........................................................................................................................25

*Williams v. Adver. Sex LLC*, 231 F.R.D. 483 (N.D. W. VA. 2005) ......................................46, 47

*WPIX, Inc. v. ivi, Inc*., 691 F.3d 275 (2d Cir. 2012) ....................................................................29

*WPIX, Inc. v. ivi, Inc*., 765 F. Supp. 2d 594 (S.D.N.Y. 2011) .....................................................29

*Yurman Design Inc. v. Chaindom Enters.,* No. 99-Civ.-9307 (JFK), 1999 WL 1075942,
1999 U.S. Dist. LEXIS 18382 (S.D.N.Y. Nov. 29, 1999) ..........................................................25

### STATUTES

15 U.S.C. § 1114 ..........................................................................................................................26

15 U.S.C. § 1117 ..........................................................................................................................35

15 U.S.C. § 1127 ..........................................................................................................................27

17 U.S.C. § 102 ............................................................................................................................26

17 U.S.C. § 106 ............................................................................................................................25

17 U.S.C. § 408 ............................................................................................................................26

17 U.S.C. § 410 ............................................................................................................................26

17 U.S.C. § 411 ............................................................................................................................26

17 U.S.C. § 501 ............................................................................................................................25

17 U.S.C. § 502 ............................................................................................................................23

## TABLE OF AUTHORITIES
(Continued)

**STATUTES**

17 U.S.C. § 504 .................................................................................................. 31, 35

**RULES**

Fed. R. Civ. P. 4 ......................................................................................42, 43, 44, 45, 47

Fed. R. Civ. P. 26 ............................................................................................................ 38

Fed. R. Civ. P. 64 ............................................................................................................ 34

Fed. R. Civ. P. 65 ...................................................................................23, 30, 31, 36, 37

N.Y. C.P.L.R. § 301 ....................................................................................................... 17

N.Y. C.P.L.R. § 302 .......................................................................................17, 18, 19, 21

N.Y. C.P.L.R. § 308 ....................................................................................................... 43

N.Y. C.P.L.R. § 311 ....................................................................................................... 43

N.Y. C.P.L.R. § 6201 ........................................................................................... 34, 35, 36

N.Y. C.P.L.R. § 6210 ..................................................................................................... 37

N.Y. C.P.L.R. § 6214 ..................................................................................................... 37

Plaintiffs Cengage Learning, Inc., McGraw-Hill Global Education Holdings, LLC, Pearson Education, Inc., and Bedford, Freeman & Worth Publishing Group, LLC (hereinafter, collectively the "Plaintiffs," and each a "Plaintiff") submit this memorandum of law in support of their *ex parte* application for 1) a temporary restraining order; 2) an order to show cause why a preliminary injunction should not issue; 3) an order authorizing expedited discovery; and 4) an order authorizing alternate service of process by electronic mail (the "Application").  Plaintiffs seek the requested relief against Defendants Doe 1 doing business as binghfran, goldenrain2855, 2010sevenseas, nd953570, and slvr17; Doe 2 doing business as grigorinayma-0 and naymanbuy; Doe 3 doing business as iaccessorydeals; Doe 4 doing business as intelimin_9; Doe 5 doing business as koroush31; Doe 6 doing business as openboxliquidators; Karina Abdala; ING Creations and Enterprises LLC; Buyback Express Inc.; Allan Walter Griese; Linda Gyorkree Khwa; Tim Krejdovsky; Binh Thai Nguyen; Serg

ei Orlov; Viktoria Orlova (a/k/a Victoria Ronk); Alejandro Morales Perez; Smart Purchase LLC; Michael Rubio; Miriam Turner (a/k/a Miriam Garner); Wize Dealz, LLC; and Jean M. Vilsaint (collectively "Defendants," and each a "Defendant") because Defendants are willfully distributing, offering for sale, and selling counterfeit copies of Plaintiffs' valuable textbooks.

## **INTRODUCTION**

Plaintiffs in this case are among the largest and most respected publishing houses in the United States.  Defendants are a group of individuals and entities engaged in the online sale of counterfeit textbooks primarily on eBay.com and Amazon.com, as well as on other online marketplaces.  In unambiguous violation of Plaintiffs' rights under the Copyright Act and the Lanham Act, Defendants advertise, offer for sale, sell, and distribute unauthorized copies of Plaintiffs' copyrighted textbooks bearing unauthorized copies of their federally registered

trademarks.  Defendants are or should be aware of, or are willfully blind to, the illegal nature of their activities, yet they persist in them nonetheless.

This action is the latest effort in a series of cases necessary to Plaintiffs' attempts to stem the tide of counterfeit textbooks flooding the U.S. market through largely anonymous storefronts on online marketplaces.  This type of infringing activity has been universally condemned, with courts in this District (and beyond) commonly issuing temporary restraining orders, asset freezes, and other *ex parte* emergency relief.[1]

eBay.com and Amazon.com are global online marketplaces, which allow manufacturers, wholesalers, and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute, and ship their wholesale and retail products from nearly anywhere in the world directly to consumers in the United States, including New York.  Indeed, Amazon has confirmed to Plaintiffs that all Defendants' online storefronts operating on Amazon.com or Abebooks.com have sold Plaintiffs' textbooks into New York within the last twelve months.  The other online marketplaces similarly allow sellers to reach consumers in remote forums with the touch of a button.  The presence of counterfeit textbooks on eBay, Amazon, and other online marketplaces is rampant and growing.

Defendants are merchants who conduct business in the United States by means of at least 34 online storefronts (the "Online Storefronts" or "Storefronts") primarily on eBay.com and

---

[1] *See, e.g., Pearson Educ., Inc. v. Does 1-16*, No. 1:18-cv-0402-DLC, Ex Parte Order (ECF No. 3) (January 17, 2018); *Cengage Learning, Inc. v. Doe 1-8*, No. 1:18-cv-403-RJS, Ex Parte Order (ECF No. 3) (January 17, 2018); *McGraw-Hill Global Educ. Holdings, LLC v. Does 1-10,* No. 1:17-cv-6224-RJS, Ex Parte Order (ECF No. 7) (S.D.N.Y. Aug. 21, 2017); *Elsevier, Inc. v. Does 1-20,* No. 1:17-cv-6225-JGK, Order to Show Cause, TRO, and Expedited Disc. Order (ECF No. 6) (S.D.N.Y. Aug. 18, 2017); *McGraw-Hill Global Educ. Holdings, LLC v. Turcios*, No. 1:17-cv-6222-GHW, Order to Show Cause, TRO, and Expedited Disc. Order (ECF No. 4) (S.D.N.Y. Aug. 17, 2017); *Pearson Educ., Inc., et al. v. Heliosbooks, Inc., et al.*, No. 1:17-cv-203-DAB, Order to Show Cause, TRO, and Expedited Disc. Order (ECF No. 3) (S.D.N.Y. Jan. 17, 2017); *Pearson Education, Inc. v. Gupta*, No. 1:16-cv-04253-LLS, Ex Parte Order (ECF No. 4) (S.D.N.Y. June 8, 2016).

Amazon.com, as well as on Abebooks.com and Barnesandnoble.com (collectively, the "Online Marketplaces").  All Defendants sell and distribute counterfeit textbooks on Amazon or Abebooks, and some also sell and distribute counterfeit textbooks on other Online Marketplaces.  Through their Online Storefronts, Defendants sell counterfeit textbooks that infringe Plaintiffs' federally registered copyrights and trademarks.  Plaintiffs conducted purchases and received from each Defendant's Storefront (or Storefronts) counterfeit copies of multiple different textbook titles— each counterfeit being an unauthorized copy of one of Plaintiffs' copyrighted works.  In many cases, Plaintiffs purchased more than one counterfeit copy of a single textbook title from the same Storefront.  To be clear, Plaintiffs' purchases represent just a snapshot of Defendants' larger infringing activities.  Plaintiffs' purchases do not, and cannot, identify all the different counterfeit textbook titles that Defendants sell or the overall volume of those counterfeit sales.

Sellers operating storefronts on Online Marketplaces, like Defendants, often use evasive tactics such as aliases, false addresses, and other incomplete registration information to conceal their identities and evade enforcement.  Because the Online Marketplaces often do not or cannot verify the business or trade names, addresses, or other contact information, sellers, like Defendants, use the Online Marketplaces to sell counterfeit products with almost total anonymity.  In fact, Defendants' Online Storefronts are either devoid of any public-facing information concerning their true identities, locations, and contact information, or contain incomplete or false information.  Even Amazon's own account-registration records cannot consistently be used to verify a seller's name or address.  To further conceal their identities, sellers, like some Defendants, use shipping or logistics companies, which provide minimal tracking information, or otherwise provide false or incomplete return addresses, to deliver their counterfeit goods.  For these reasons, and others, it is virtually impossible for Plaintiffs to obtain on their own Defendants' true identities,

locations, and contact information.

Plaintiffs bring this action at a critical time, just prior to the busy fall selling season as students return to school in August and September.  It is imperative that students shopping for their fall semester courses should receive authentic textbooks, not counterfeits, which may be missing or otherwise have different content than the legitimate books.  Instead, Defendants are interjecting counterfeit textbooks into the market through their sales to unsuspecting students and others. Because Defendants sell counterfeit textbooks through their Storefronts on the Online Marketplaces and their inventory is not readily available for the public or Plaintiffs to inspect, the full extent of their infringing activity is unknown.  Defendants either deliberately sell counterfeits or, alternatively, are unable or unwilling to identify and stop selling counterfeits.  Accordingly, without injunctive relief, Defendants will continue to sell counterfeits in potentially massive quantities unabated, harming students, authors, and publishers.

Based on the nature and scope of Defendants' wrongful activities, Plaintiffs will ultimately be entitled to substantial damages, totaling millions of dollars.  Given the circumstances, and based on Plaintiffs' experience combatting counterfeiting, Defendants are almost certainly infringing more pervasively and will likely go to great lengths to continue their illegal conduct, as well as to transfer, conceal, and/or destroy their inventory of counterfeit textbooks and related evidence, and dissipate the assets necessary to satisfy, even in small part, the Court's final judgment.

Accordingly, Plaintiffs respectfully request that the Court grant their Application for: 1) an order temporarily enjoining any further infringement and restraining Defendants' assets, as well as the sale of Plaintiffs' textbooks unless and until Plaintiffs determine Defendants' inventory to be legitimate; 2) an order to show cause why a preliminary injunction should not issue; 3) an order authorizing expedited discovery to identify the true names and locations of Defendants and to

inspect Defendants' inventory of Plaintiffs' textbooks; and 4) an order authorizing alternate service of process by electronic mail.

## STATEMENT OF FACTS

### A.  Plaintiffs' Businesses and Their Copyrighted Works.

Plaintiffs are among the largest providers of textbooks and tailored learning solutions in the United States.  Compl. ¶¶ 2, 35; Declaration of Steven Rosenthal ("Rosenthal Decl.") ¶ 3, Declaration of Richard Essig ("Essig Decl.") ¶ 3, Declaration of Jessica Stitt ("Stitt Decl.") ¶ 3; Declaration of William Goudary ("Goudary Decl.") ¶ 3 (collectively, "Publishers' Decl.").  In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content and assessment material in physical, digital, and multi-media formats.  Compl. ¶ 35; Publishers' Decl. ¶ 3.  Plaintiffs' physical textbooks are published under numerous well-known imprints, including Brooks/Cole, Academic Press, McGraw-Hill/Irwin, Prentice Hall, and Bedford/St. Martin's,[2] Compl. ¶ 36, Plaintiffs' textbooks are among the most popular and widely used titles in their fields.  Compl. ¶ 35.  They are sold to students and others throughout the United States and in many other countries, in retail and online bookstores and marketplaces, including Amazon.com.  *Id.*; Publishers' Decl. ¶ 3.

Exhibit B to the Complaint is a list of a number of Plaintiffs' copyrighted works (the "Authentic Works").  Plaintiffs own or control the copyright in each of their respective works or derivative works listed on Exhibit B to the Complaint.  Compl. ¶ 39; Publishers' Decl. ¶ 5. Plaintiffs have the exclusive right to reproduce and distribute the Authentic Works.  *Id.*  Plaintiffs or their predecessors or affiliates have duly registered their respective copyrights protecting the

---

[2] For purposes of their claims against Defendants, Exhibit A to the Complaint includes a complete list of Plaintiffs' imprints.

Authentic Works as set forth on Exhibit B.  *Id.*  Plaintiffs also own or are the exclusive licensee to their respective registered trademarks and service marks printed on the Authentic Works, as identified on Exhibit C to the Complaint (the "Marks").  Compl. ¶ 40; Publishers' Decl. ¶ 6.

Plaintiffs invest significant time and money into publishing their textbooks.  Compl. ¶ 37; Publishers' Decl. ¶¶ 4, 13.  Plaintiffs (and/or their predecessors) have also invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their trademarks.  Compl. ¶ 37; Publishers' Decl. ¶ 13.  Plaintiffs have also gone to great lengths to educate distributors about the counterfeiting problem in the textbook industry.  In particular, Plaintiffs have worked with many distributors to create and adopt "Best Practices" to avoid sourcing counterfeit textbooks.  Compl. ¶ 58; Publishers' Decl. ¶ 13.

Plaintiffs would suffer serious financial injury if their copyrights and trademarks were not enforced.  Compl. ¶ 38; Publishers' Decl. ¶ 13.  A substantial decline in their revenue from sales or rentals of their copyrighted works could cause Plaintiffs to cease publishing one or more deserving textbooks.  *Id.*  This would adversely impact the creation of new textbooks, on scholarly endeavor, as well as on the availability and quality of educational content in the humanities, sciences, and social sciences.  *Id.*

### B.     The Online Marketplaces.

eBay Inc. is a global e-commerce company.  The eBay online marketplace allows third-party sellers worldwide to advertise, offer for sale, and sell books, both new and used, directly to consumers.  *See* Compl. ¶ 41.  According to its financial statements, eBay enabled $88 billion of gross merchandise volume in 2017, and currently has 170 million global active buyers across its platforms and one billion active live listings globally.  *See* https://investors.ebayinc.com/static-files/929d98c4-8eb9-4b05-a0bc-9c5501a5c2f1 (last visited Aug. 13, 2018).  The eBay site has an expansive search function giving buyers the ability to search for books by any combination of

ISBN, title, author, and a number of other criteria.  Compl. ¶ 43; Declaration of Dan Seymour ("Seymour Decl."), submitted herewith, ¶ 5.  Thus, with just a few keystrokes, consumers can see a list of sellers offering a particular textbook title.  *Id.*  Each, or nearly each, listing for the title displays a stock image of the cover of the book and identifies the price of the book, whether it is available to "Buy It Now" or by auction, the cost of shipping, and whether the book offered for sale is new or used and, if used, the condition of the book.  *Id.*  To unsuspecting individual consumers, the listings all appear to be for legitimate copies of textbooks because they are listed with the same cover image, ISBN, edition, author, and publisher.  *Id.*

When a seller receives an order through their online storefront on eBay, the seller ships the book(s) directly to the customer.  Compl. ¶ 43; *see* http://pages.ebay.com/help/pay/accepted-payment-methods.html#options (last visited Aug. 13, 2018).  eBay sellers choose the payment methods their storefront will accept, e.g., PayPal or eBay checkout.  Compl. ¶ 43.  The latter requires a seller to have both a payment gateway account (with Payflow, Authorize.Net, or CyberSource) and an Internet merchant account.  *Id.*  Payment is processed upon checkout and sellers receive payment immediately.  *Id.*

Like eBay, Amazon.com, Inc. is a global e-commerce company; it is also the world's largest e-commerce retailer.  Compl. ¶ 44.  In addition to providing a platform for Amazon's own sales, Amazon is a marketplace for third-party sellers to advertise, offer for sale, and sell their products or goods directly to consumers.  Each day, millions of consumers use Amazon's marketplace to purchase a wide range of products, including textbooks, from Amazon and third-party sellers. *Id.*

Amazon provides third-party sellers on its platform the option of using its Fulfillment by

Amazon ("FBA") service.[3]   Compl. ¶ 45.   The FBA program allows third-party sellers, like Defendants, to take advantage of Amazon's fulfillment networks and logistics expertise.   FBA sellers ship their products to Amazon's fulfillment centers across the country and, for a fee, have Amazon store, manage, pack, ship, and handle customer service and returns for the third party's products and goods.[4]   *Id.*   When a customer purchases a product from an FBA seller, the Amazon.com website displays the FBA seller's storefront name and indicates that the purchase will be "Fulfilled by Amazon."   Seymour Decl. ¶ 9.   If a third-party seller chooses not to use Amazon's FBA service, the seller is responsible for fulfilling orders they receive on their own.   *Id.* When a customer purchases a product from a non-FBA seller, the Amazon.com website indicates that the product is "sold by" the non-FBA seller.   *Id.*   Amazon.com does not list or display the true name of the individual or company operating a storefront.   *Id.*

For textbooks, the product page is tied to the International Standard Book Number ("ISBN").[5]   Compl. ¶ 47.   Accordingly, on Amazon.com there should be a single product page for each of the Authentic Works that will list multiple sellers, including those who may be selling counterfeits.   *Id.*   To unsuspecting consumers, the offers all appear to be for legitimate copies of the books because they are listed under the same product page as the authentic version.   *Id.*   The consumer is left to choose which price they want to pay and from which seller.   *Id.*

Customers may leave a substantive review about a product on the product page.   Customers may also leave a review about the buying or shipping experience or the quality of the particular

---

[3]                                                                                                          *See* https://www.amazon.com/gp/help/customer/display.html/ref=hp_left_cn?ie=UTF8&nodeId=200229160 (last visited Aug. 7, 2018).

[4] *See id.*

[5]                                                                                                          *See* https://www.amazon.com/gp/help/customer/display.html/ref=hp_rel_topic?ie=UTF8&nodeId=200202190 (last visited Aug. 7, 2018).

product they received.  On the product page, therefore, there often are substantive reviews as well as reviews that comment on the buyer's experience with the particular seller that sold the product.  *See* Compl. ¶ 48.  As such, someone who purchases a textbook on Amazon.com may leave a review complaining about the book's inferior quality, as is often the case with counterfeits, on the textbook's product page.  *See id.*  The name of the seller that supplied the counterfeit, or otherwise provided the consumer with an unsatisfactory experience, is not associated with the textbook's product page.  *See id.*  As a result, the overall review—and perceived value—of the author's and publisher's work deteriorates.  *Id.*

Like eBay and Amazon, Abebooks.com is a global e-commerce platform, but it specializes in the sale of books and textbooks.  Compl. ¶ 49.  *See* https://www.abebooks.com (last visited Aug. 6, 2018).  Abebooks is a wholly owned subsidiary of Amazon.  *See Id.*; Seymour Decl. ¶ 10.  The Abebooks online marketplace allows third-party sellers to advertise, offer, and sell textbooks, both new and used, directly to consumers.  Compl. ¶ 50; Seymour Decl. ¶ 10.  Similarly, Barnes and Noble, Inc. operates an online marketplace on its site located at www.barnesandnoble.com, which allows third-party sellers to advertise, offer, and sell new and used textbooks directly to consumers.  *Id.*

### C.    **Defendants' Illegal Online Business.**

Defendants are a group of counterfeiters who control and are doing business as and through multiple Online Storefronts on eBay.com, Amazon.com, Abebooks.com, and Barnesandnoble.com, including the following:

(1)     binghfran (eBay URL https://www.ebay.com/usr/binghfran);

(2)     goldenrain2855 (eBay URL https://www.ebay.com/usr/goldenrain2855);

(3)     2010sevenseas (eBay URL https://www.ebay.com/usr/2010sevenseas);

(4)     nd953570 (eBay URL https://www.ebay.com/usr/nd953570);

(5)     slvr17 (eBay URL https://www.ebay.com/usr/slvr17);

(6)     grigorinayma-0 (eBay URL https://www.ebay.com/usr/grigorinayma-0);

(7)     naymanbuy (Amazon Seller ID A1Q6PCT9NZ8SG0);

(8)     iaccessorydeals (eBay URL https://www.ebay.com/usr/iaccessorydeals);

(9)      intelimin_9 (eBay URL https://www.ebay.com/usr/intelimin_9);

(10)    koroush31 (eBay URL https://www.ebay.com/usr/koroush31);

(11)    openboxliquidators (eBay URL https://www.ebay.com/usr/openboxliquidators);

(12)    ingllc (eBay URL https://www.ebay.com/usr/ingllc);

(13)    ING Creations & Enterprises Online Storefronts (Amazon Seller ID A1NMQ7CLS4CZQM);

(14)    buyback-express-store (eBay URL https://www.ebay.com/usr/buyback-express-store);

(15)    -Buyback Express- (Amazon Seller ID A2LHO0L8U1YFTF);

(16)    Buyback Express (Abebooks URL https://www.abebooks.com/Buyback-Express-Alton-IL-U.S.A/8180984/sf?cm_sp=BOT-_-seller-_-sf);

(17)    Buyback Express (Barnes & Noble Seller ID BNA0000440);

(18)    envoypilot2015 (eBay URL http://www.ebay.com/usr/envoypilot2015)

(19)    violet013180 (eBay URL https://www.ebay.com/usr/violet013180);

(20)    *gopeachy* (eBay URL https://www.ebay.com/usr/*gopeachy*);

(21)    GoPeachy (Abebooks URL https://www.abebooks.com/GoPeachy-Freehold-NJ-U.S.A/53947590/sf?cm_sp=BOT-_-seller-_-sf);

(22)    textbook-4less (eBay URL https://www.ebay.com/usr/textbooks-4less);

(23)    cheaperbooks79 (Amazon Seller ID AGJ047Y2R8H41);

(24)    actuelfoto3 (eBay URL https://www.ebay.com/actuelfoto3);

(25)    victoriashop1 (eBay URL https://www.ebay.com/usr/victoriashop1);

(26)    alejmor81 (eBay URL https://www.ebay.com/usr/alejmor81);

(27)    SmartPurchase123 (Amazon Seller ID A3HNMVOHJFHB6P);

(28)    thebestbooksale_9 (eBay URL https://www.ebay.com/usr/thebestbooksale_9);

(29)    TheBestBookSale (Amazon Seller ID A12I559RUKO9G5);

(30)    miriaturne-30 (eBay URL https://www.ebay.com/usr/miriaturne-30);

(31)    dealz24-7 (eBay URL http://www.ebay.com/usr/dealz24-7);

(32)    Wize Dealz (Amazon Seller ID AXA2D7Z8Y9C5H);

(33)    jsale0125 (eBay URL https://www.ebay.com/usr/jsale0125); and

(34)    J.sales (Amazon Seller ID ATG4YAD81P21V).

Compl. ¶ 10-30; Publishers' Decl. ¶ 7; Seymour Decl. ¶¶ 11-13.

Through their enforcement efforts, Plaintiffs have confirmed that Defendants sell unauthorized and illegal counterfeit textbooks, including Plaintiffs' Authentic Works, through their Online Storefronts. Compl. ¶ 59; Publishers' Decl. ¶ 7; Seymour Decl. ¶ 16. Collectively, Defendants have infected the online marketplace with counterfeits and depressed prices.

Plaintiffs' purchases from Defendants' Storefronts confirm that Defendants distribute counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks. Compl. ¶ 59; Publishers' Decl. ¶ 8; Seymour Decl. ¶¶ 16-20. After making purchases from the Storefronts, Plaintiffs examined the books received to determine if they were counterfeit. Publishers' Decl. ¶ 8; Seymour Decl. ¶ 16. All of the Authentic Works identified on Exhibit 1 to the Seymour Declaration were purchased from the Storefronts and confirmed by Plaintiffs to be counterfeit (the "Counterfeit Books"). Seymour Decl. ¶¶ 16; Publishers' Decl. ¶ 8. To be clear, however, the list of 100 unique titles that make up the Counterfeit Books does not describe all of the textbook titles that Defendants are infringing or the overall volume of Defendants' counterfeit sales. Compl. ¶ 61; Declaration of Kerry M. Mustico ("Mustico Decl."), submitted herewith, ¶ 5. The list of Counterfeit Books is a non-exhaustive, representative list of Defendants' sales of counterfeit textbooks.

11

Plaintiffs' discovery of Defendants' counterfeiting activities has been challenging and time-consuming.  Infringing activity typically takes place behind closed doors.  The Defendants here hide behind the anonymity of their Storefronts.  See Compl. ¶ 62; Seymour Decl. ¶ 21. Customers receive little to no information on the Online Marketplaces identifying the sellers behind the Storefronts.  Compl.  ¶ 62; Seymour Decl. ¶ 21.  And, the shipments often do not include accurate, complete, or any return address information.  *See* Seymour Decl. ¶ 21.  In addition, the Online Marketplaces process the payments for orders placed with the Storefronts and sales proceeds are distributed accordingly.  Compl. ¶¶ 43, 51.  Thus, Defendants' financial institution account information similarly remains hidden from consumers.

Several Defendants operate their Online Storefronts on Amazon as "FBA sellers," i.e., Defendants ship their textbooks to one of Amazon's fulfillment centers, and Amazon fulfills Defendants' orders on their behalf.  Compl.  ¶ 63.  For example, Defendants Alejandro Morales Perez and Smart Purchase LLC use FBA to fulfill orders received by their Online Storefront, SmartPurchase123.  *Id.*  Accordingly, the return address on packages received from SmartPurchase123 identifies one of Amazon's fulfillment centers.  *Id.*  Other Defendants, like Doe 2 operating Naymanbuy on Amazon, fulfill at least some of their own orders by shipping or arranging to have a third party ship books directly to customers.  *Id.*  However, even then, the seller's true identity and address often remain concealed.  With respect to Doe 2 and Naymanbuy, the return name identified "Grigoriy Nayman" but Plaintiffs were unable to locate anyone by that name at the return address listed. *Id.*

Plaintiffs provided notice to Amazon of the Counterfeit Books they purchased from Defendants' Amazon and Abebooks Online Storefronts.  Compl. ¶ 64; Mustico Decl. ¶ 12.  In response, Amazon provided contact information associated with Defendants' Amazon and

Abebooks accounts for each of the Storefronts.  *Id* . However, the contact information in Amazon's account records is only as good as the information sellers choose to provide when registering their accounts.   Compl. ¶ 64; Seymour Decl. ¶ 22.   As Plaintiffs have discovered through prior enforcement efforts, counterfeiters often provide Amazon with fictitious names or addresses, as many Defendants here did.  Compl. ¶ 64; Mustico Decl. ¶ 12; Seymour Decl. ¶ 24.  Sellers need only have a valid bank account number to receive their sales proceeds and/or a valid credit card number to pay fees for selling on the marketplace.  *Id.*  For these reasons, Plaintiffs were unable to verify the identities and addresses of several Defendants who have been identified in this suit as Does despite Amazon's assistance in providing certain account registration information.  For example, Amazon provided the contact information associated with Doe 2's Amazon Storefront, Naymanbuy, which was the same name and address Doe 2 listed as return information on shipments of Counterfeit Books.  Seymour Decl. ¶ 22.  Accordingly, for the same reason described above, Doe 2's true identity and location remains unknown to Plaintiffs.  All of the remaining Doe Defendants operate their Online Storefronts only on eBay (at least as far Plaintiffs are aware) and Plaintiffs could not verify any of the names and addresses that these Defendants identified in the return information on packages Plaintiffs received.  Seymour Decl. ¶ 22.  Thus, without additional discovery, Plaintiffs have no way to verify the Doe Defendants true identities and locations.

A number of Defendants appear to be working together.  Many of the Counterfeit Books exhibit the same counterfeit traits and inferior qualities, and several of the Online Storefronts offer similar inventories.  Compl. ¶ 64; Seymour Decl. ¶ 23.  Moreover, Plaintiffs learned that some Online Storefronts were operated by the same Defendant or group of Defendants because the return address on packages received from seemingly unrelated Online Storefronts was the same.  Compl. ¶ 65.  For example, Plaintiffs believe that Doe 1 operates the goldenrain2855, 2010sevenseas,

binghfran, nd953570, and slvr17 Online Storefronts on eBay because the return information on packages Plaintiffs received from all of them identified the same return address in Woodland Hills, California. *Id.* Similarly, Plaintiffs believe the two Online Storefronts operated by Defendants Sergei Orlov and Viktoria Orlova (who does business under the name Victoria Ronk) are connected because all shipments of Counterfeit Books from their Online Storefronts came from the same address in Hackensack, New Jersey. *Id.*

Plaintiffs believe other seemingly unrelated Online Storefronts are linked based on contact information Defendants used to register their Online Storefronts on Amazon and Abebooks. While counterfeit sellers often use inaccurate or fictitious contact information to register their Online Storefronts, Plaintiffs nonetheless were able to determine that certain Online Storefronts are operated by the same Defendant or group of Defendants because they used identical or nearly identical contact information—be it fictitious or not. Seymour Decl. ¶ 24. For example, after Amazon disclosed Defendants' contact information, Plaintiffs were able to determine that the Online Storefront SmartPurchase123 is registered to Alejandro Morales Perez, who also operates the Online Storefront alejmor81 on eBay. *Id.* Because SmartPurchase123 utilizes the FBA service and, therefore, the return address on its packages identifies only Amazon's fulfillment center, Plaintiffs could not have connected these related Online Storefronts without the additional information from Amazon. *Id.*

Several other Defendants operate more than one Online Storefront, sometimes on the same or different Online Marketplaces. Compl. ¶ 67; Seymour Decl. ¶ 25. These same Defendants, and probably others, are likely operating still other Online Storefronts, potentially on other e-commerce platforms, that Plaintiffs have not discovered yet.

As is typical for counterfeiters, Defendants have tried to operate under the radar by selling

counterfeit textbooks as "used," despite the books being new, counterfeit copies.  Compl. ¶ 68; Seymour Decl. ¶ 19.  Many of the Counterfeit Books Plaintiffs received from Defendants were listed as used, but in "very good" or "like new" condition, despite being in brand-new condition. Compl. ¶ 68; Seymour Decl. ¶ 19.  For example, Plaintiffs purchased a copy of *Using MIS,* 10th edition, ISBN 9780134606996, which was listed in "Used-Very Good" condition, from the J.Sales Online Storefront on Amazon.  Compl. ¶ 68.  But, rather than receiving the legitimate textbook, Plaintiffs received what appears to be a brand-new, counterfeit copy.  Listing new counterfeit textbooks in "used" condition ostensibly justifies Defendants' offer of a new textbook at below-market prices.  Compl. ¶ 68; Seymour Decl. ¶ 19.  The purportedly "used" condition also can explain why the counterfeit does not include digital access cards, which the publishers often include with and as a supplement to the legitimate textbook.  *Id.*

Defendants most certainly know that the textbooks they sell are counterfeit.  Indeed, several Defendants' Storefronts contain reviews from customers complaining that they received what appears to be a counterfeit textbook.  Compl. ¶ 69; Seymour Decl. ¶ 20, Ex.3.  For example, a review posted on the grigorinayma-0 Storefront simply complained, "Counterfeit book!"  *Id.* Another reviewer on the SmartPurchase123 Storefront warned on April 12, 2018, "Beware both books received were counterfeit."  *Id.*  Yet, Smart Purchase LLC and Alejandro Morales Perez kept right on selling their counterfeits, including 25 counterfeit textbooks to Plaintiffs between April 25 and July 11, 2018.  *Id.*

Defendants knew or should have known that the Counterfeit Books they sold were infringing.  Compl. ¶ 72.  In addition to reviews from customers, Defendants are likely aware that their textbooks are counterfeit based on prices that are materially cheaper than Defendants would be required to pay had they purchased Plaintiffs' Authentic Works directly from the respective

publishers or from legitimate third-party sellers.  Compl. ¶ 70.

The Counterfeit Books are generally different from and/or inferior to legitimate copies of the Authentic Works.  Compl. ¶ 71.  Among other differences, the binding, glue, paper, color and printing are often different and inferior.  *Id.*  Based on the use of Plaintiffs' Marks, actual and prospective purchasers are likely to believe that the Counterfeit Books are legitimate copies of the Authentic Works.  *Id.*  But, the inferior Counterfeit Books are inferior, this weakens, blurs, and tarnishes Plaintiffs' Marks.  *Id.*  They further injure Plaintiffs' business reputations by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of textbooks of lesser quality.  *Id.*; Publishers' Decl. ¶ 12.  Defendants have caused Plaintiffs significant and substantial harm, including in this District, and Defendants are aware that they have caused Plaintiffs to suffer such harm.  Compl. ¶¶ 74, 75; Publishers' Decl. ¶¶ 9-13.

## <u>ARGUMENT</u>

### I.    THIS COURT HAS PERSONAL JURISDICTION

Prior to discovery, a plaintiff need only allege facts sufficient to create a *prima facie* showing of jurisdiction.  *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990) ("In *Hoffritz* [*for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985)], we said that though a plaintiff bears the burden of establishing jurisdiction over the defendant by a preponderance of the evidence, the plaintiff need make only a *prima facie* showing that jurisdiction exists prior to the holding of an evidentiary hearing.").

There are two components to personal jurisdiction over a non-domiciliary in a case involving a federal question.  *See, e.g., Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).  The first is the forum's long-arm statute, and the second is constitutional due

process.  *See id.* at 163-64.   In this case, New York's long-arm statute provides personal jurisdiction over Defendants under CPLR § 302(a)(1) and (3), and such jurisdiction satisfies constitutional due process requirements.[6]

A.      **Section 302(a)(1).**

Plaintiffs have alleged that Defendants distribute, offer for sale, and/or sell infringing copies of the Authentic Works through their Storefronts on eBay and other highly interactive Online Marketplaces that are widely available in the United States, including to New York consumers.  *See* Compl. ¶ 32.   These alleged activities form the very basis of Plaintiffs' copyright and trademark infringement claims and, thus, support personal jurisdiction over Defendants in New York under Section 302(a)(1).  It provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>  (1) transacts any business within the state or contracts anywhere to supply goods or services in the state….

C.P.L.R. § 302(a)(1).

Here, Defendants conduct their infringing sales through Storefronts on highly interactive websites that are continuously accessible to and target New York consumers.  "A website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)."  *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, No. 15 Civ. 8459, 2016 WL 3748480, 2016 Dist. LEXIS 89149, at *7 (S.D.N.Y. July 8, 2016) (citing *Chloe v. Queen Bee of*

---

[6] Defendants Miriam Garner and Wize Dealz, LLC are subject to general jurisdiction in New York under C.P.L.R. § 301 because they reside and/or are domiciled in New York.  *See* Compl. ¶¶ 28-29.

*Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (finding defendant's operation of highly interactive website plus over 50 shipments of goods into New York sufficient for personal jurisdiction)); *accord McGraw-Hill Global Educ. Holdings, LLC v. Mathrani,* Case No. 16-cv-8530-WHP, 2017 WL 6343627, 2017 U.S. Dist. LEXIS 204263, at *11 (SDNY Dec. 12, 2017) (finding personal jurisdiction where defendant sold textbooks on online marketplaces to New York customers); *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC,* 2016 WL 7451306, 2016 U.S. Dist. LEXIS 178796, at *7-8 (S.D.N.Y. December 27, 2016) (finding operation of highly interactive website through which New York consumers could place orders plus shipment of "numerous orders" to consumers in New York sufficient for personal jurisdiction); *EnviroCare Techs., LLC v. Simanovsky,* No. 11-CV-3458 (JS)(ETB), 2012 WL 2001443, 2012 U.S. Dist. LEXIS 78088 at *9 (E.D.N.Y. June 4, 2012) (finding personal jurisdiction and noting that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York") (citations omitted).

Operating a storefront on a highly interactive website can provide the basis for exercising personal jurisdiction under New York's long-arm statute even though sellers are not able to control their online storefront to the same extent they control their own website. *Lifeguard Licensing*, 2016 Dist. LEXIS 89149, at *8-9; *EnviroCare Techs.*, 2012 U.S. Dist. LEXIS 78088, at *10-11 (finding § 302(a)(1) satisfied in trademark infringement suit where defendant sold their products exclusively through Amazon and eBay). Thus, regularly offering and selling goods via eBay or other such online marketplaces can form the basis for long-arm jurisdiction. *See id.* The relevant inquiry is "the extent to which the [online marketplace] is used as a means for establishing regular business with a remote forum." *See EnviroCare Techs.*, 2012 U.S. Dist. LEXIS 78088, at *10 (internal quotations omitted). "[J]urisdiction is proper when a sophisticated seller operates a

commercial business through eBay or Amazon." *EnviroCare Techs.*, 2012 U.S. Dist. LEXIS 78088, at *11.  Accordingly, Defendants' operation of the Storefronts on eBay, and other Online Marketplaces, through which New York consumers can purchase counterfeit copies of Plaintiffs' Authentic Works establishes long-arm jurisdiction over Defendants under § 302(a)(1).

In addition, Amazon has confirmed that each Defendant operating an Online Storefront on Amazon or Abebooks has sold copies of Plaintiffs' textbooks into New York within the last 12 months.  *See* Compl. ¶ 60; Mustico Decl. ¶ 13.  Defendants' sales of textbooks are the very basis for Plaintiffs' copyright and trademark infringement claims.  Thus, Defendants are subject to personal jurisdiction here for Plaintiffs' claims arising from Defendants' business activity in New York.  *See McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, Case No. 16-cv-8530-WHP, 2017 WL 6343627, 2017 U.S. Dist. LEXIS 204263, at *11 (SDNY Dec. 12, 2017) (holding that defendant's sales of textbooks on online marketplaces to New York customers is "essentially the same conduct on which Plaintiffs' claims are premised—i.e., the sale of counterfeit textbooks through online marketplaces") (citing and applying principles espoused in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)); *cf. Centrifugal Force, Inc. v. Softnet Commun., Inc.,* 08 Civ. 5463 (CM)(GWG), 2009 WL 1059647, 2009 U.S. Dist. LEXIS 37084, at *11 (S.D.N.Y. April 17, 2009) ("Section 302(a)(1) is a 'single act' statute, meaning that proof of a single act or transaction is sufficient to confer personal jurisdiction.").

### B.      Section 302(a)(3).

Section 302(a)(3) of New York's long-arm statute is also satisfied.  It allows for specific personal jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a)(3).

19

Here, Plaintiffs allege that Defendants committed copyright and trademark infringement—both of which sound in tort. *See Rogers v. eColor Studio*, No. 11-CV-4493 (ARR) (RER), 2013 WL 752256, 2013 U.S. Dist. LEXIS 28332, at *6 (E.D.N.Y. Feb. 7, 2013) ("Copyright infringement is a commercial tort."), *adopted by* 2013 WL 750120, 2013 U.S. Dist. LEXIS 27029 (E.D.N.Y. Feb. 27, 2013); *McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) (describing copyright and trademark infringement as torts).

The situs of Plaintiffs' injury is New York, where all Plaintiffs reside and conduct a significant amount of their business, and where four of the five Plaintiffs have a principal place of business.[7] *See Int'l Diamond Importers, Inc. v. Med Art, Inc.*, No. 15-cv-4045, 2017 WL 2839640, 2017 U.S. Dist. LEXIS 102257, at *13 (S.D.N.Y. June 29, 2017) ("'The torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held.'" (quoting *McGraw-Hill Cos.*, 375 F. Supp. 2d at 256)); *Grand v. Schwarz*, No. 15-cv-8779, 2016 WL 2733133, 2016 U.S. Dist. LEXIS 61606, at *11 n.4 (S.D.N.Y. May 10, 2016) (holding that trademark injury occurred in New York because, *inter alia*, damage occurs when consumers confuse origin of defendant's services with that of trademark owner who resides and conducts business in New York); *Lewis v. Madej*, No. 15-cv-2676, 2015 WL 6442255, 2015 U.S. Dist. LEXIS 144384, *9 (S.D.N.Y. Oct. 23, 2015) ("District Courts in this Circuit have consistently found that the tort of trademark infringement causes injury in the state where the allegedly infringed intellectual property is held."); *Capitol Records, LLC v. VideoEgg, Inc.,* 611 F. Supp. 2d 349, 362 (S.D.N.Y. 2009) (Baer, J.) (finding situs of injury to be plaintiff's principal place of business, New York, as a result of diminished copyright value).

---

[7] Three of the four Plaintiffs—McGraw-Hill Global Education Holdings, LLC, Pearson Education, Inc., and Bedford, Freeman & Worth Publishing Group, LLC—have a principal place of business in New York, Compl. ¶¶ 6-9, and all five conduct a significant amount of business in New York, Publishers' Decl. ¶ 4.

Plaintiffs also have established that Defendants should have reasonably expected their counterfeiting activity to have consequences in New York, where all Plaintiffs reside and conduct significant business.  *See McGraw-Hill Cos.*, 375 F. Supp. 2d at 256 ("It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York . . . ."); *Lewis*, 2015 U.S. Dist. LEXIS 144384, at *9-10 (finding that trademark infringement was purposefully directed at plaintiffs, who were domiciled in New York, such that defendant could reasonable expect injury to occur in New York); *Savage Universal Corp. v. Grazier Constr., Inc.*, 04 Civ. 1089 (GEL), 2004 WL 1824102, 2004 U.S. Dist. LEXIS 16088, at *30 (S.D.N.Y. Aug. 13, 2004) ("the 'first effects' of trademark infringement or dilution are typically felt where the trademark owner resides and conducts business").  In addition, Defendants sold the Counterfeit Books on websites continuously accessible throughout the United States, including to New York residents.  That website also offers shipping throughout the United States, including New York.  Thus, it is reasonably foreseeable that Defendants' infringing activity would have consequences in New York, and Defendants necessarily derive their revenue from interstate commerce.  *See* Compl. ¶ 60.  Accordingly, the Court has personal jurisdiction over Defendants under CPLR § 302(a)(3).

### C.    Due Process

If the forum's long-arm statute permits personal jurisdiction, the second inquiry is whether personal jurisdiction comports with constitutional due process requirements.  *Chloe*, 616 F.3d at 164 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  The due process analysis involves two related inquiries: "minimum contacts" and "reasonableness."  *Id.*

The minimum contacts inquiry has two prongs: (1) whether the defendant purposefully availed itself of the privilege of doing business in the forum, thus invoking the benefits and protections of the forum's laws; and (2) whether the controversy at issue arose out of or relates to

the defendant's in-forum conduct.  *See, e.g., Chew v. Dietrich,* 143 F.3d 24, 27-29 (2d Cir. 1998).

Here, minimum contacts are satisfied for the same reasons identified with respect to New York's

long-arm statute.  *See* Argument, Sections I.A-B, *supra*.  Plaintiffs allege that through their

Storefronts Defendants distributed, offered to sell, and sold counterfeit copies of Plaintiffs'

Authentic Works to consumers throughout the United States, including in this District.  Compl. ¶

60.  By doing so, as Plaintiffs allege, Defendants target consumers in New York.  *Id.*; *see also*

*Chloe,* 616 F.3d at 171-72 & n.8 (holding that by shipping goods to New York, defendant's

conduct was "*purposefully directed toward the forum State*" and noting that jurisdiction is proper

where a defendant delivers its products into the stream of commerce and subsequently injures a

forum trademark holder) (internal quotations and citation omitted).  Plaintiffs also allege that

Defendants engaged in intentionally tortious conduct aimed at Plaintiffs, who reside and/or are

domiciled in New York.  *See* Compl. ¶¶ 1, 6-9, 70; Publishers' Decl. ¶ 4.

The exercise of personal jurisdiction over Defendants in these circumstances also satisfies

the relevant factors for reasonableness.[8]  As to the first factor, while some Defendants could be

burdened by Plaintiffs' choice of forum, "generalized complaints of inconvenience arising from

having to defend [oneself] from suit in New York do not add up to a compelling case . . . that

would render jurisdiction unreasonable."  *Chloe,* 616 F.3d at 173 (noting that inconvenience cuts

both ways).  As in *Chloe,* the second factor favors New York as the forum because New York has

"a manifest interest in providing effective means of redress for its residents."  *Id.*; *Verragio, Ltd.*

---

[8] In determining whether the exercise of jurisdiction is reasonable, courts consider five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloe,* 616 F.3d at 164 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.,* 480 U.S. 102, 113 (1987)).

*v. SK Diamonds*, No. 1:16-cv-6931 (KBF), 2017 WL 1750451, 2017 U.S. Dist. LEXIS 68422, *17 (S.D.N.Y. May 4, 2017) ("New York has a significant interest in protecting copyright holders from the sale of infringing goods in New York." (internal quotations omitted)).  The third and fourth factors are satisfied because Plaintiffs reside and/or have their principal place of business in New York, and many of their witnesses are located here.  Thus, New York will allow Plaintiffs to obtain the most convenient and effective relief, and provide the most efficient resolution.  *See Chloe*, 616 F.3d at 173.  Fifth, all the states share New York's interest in protecting intellectual property rights and stopping counterfeiting.

## II.   DEFENDANTS MEET THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This Court has the authority to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); *cf.* Fed. R. Civ. P. 65.  The relief Plaintiffs request is routinely granted in counterfeiting cases in this District and others.  In fact, the relief Plaintiffs seek is nearly identical to that granted in similar cases brought by Plaintiffs in this District.  *See, e.g., Pearson Educ., Inc. v. Does 1-16*, No. 1:18-cv-0402-DLC, Ex Parte Order (ECF No. 3) (Jan. 17, 2018); *Cengage Learning, Inc. v. Doe 1-8*, No. 1:18-cv-403-RJS, Ex Parte Order (ECF No. 3) (Jan. 17, 2018); *McGraw-Hill Global Educ. Holdings, LLC v. Does 1-10,* No. 1:17-cv-6224-RJS, Ex Parte Order (ECF No. 7) (S.D.N.Y. Aug. 21, 2017); *Elsevier, Inc. v. Does 1-20,* No. 1:17-cv-6225-JGK, Order to Show Cause, TRO, and Expedited Disc. Order (ECF No. 6) (S.D.N.Y. Aug. 18, 2017); *McGraw-Hill Global Educ. Holdings, LLC v. Turcios*, No. 1:17-cv-6222-GHW, Order to Show Cause, TRO, and Expedited Disc. Order (ECF No. 4) (S.D.N.Y. Aug. 17, 2017); *Pearson Educ., Inc., et al. v. Heliosbooks, Inc., et al.*, No. 1:17-cv-203-DAB, Order to Show Cause, TRO, and Expedited Disc. Order (ECF No. 3) (S.D.N.Y. Jan. 17, 2017); *cf. Pearson Education, Inc. v. Gupta*, No. 1:16-cv-04253-LLS,

Ex Parte Order (ECF No. 4) (S.D.N.Y. June 8, 2016).[9]  In *Heliosbooks*, Plaintiffs brought identical claims against different Doe defendants selling counterfeit textbooks online through 30 Amazon storefronts, all of which used Amazon's FBA service.  *See Heliosbooks, Inc.,* No. 1:17-cv-203-DAB, Compl. ¶¶ 27-30 (ECF No. 1).  After the TRO issued in *Heliosbooks*, Plaintiffs worked cooperatively to carry out the terms of the injunction with Amazon and all defendants who appeared in response to the TRO ("responsive defendants").  Mustico Decl. ¶ 9.  In particular, Plaintiffs quickly negotiated stipulated preliminary injunctions with all of the responsive defendants, as well as to conduct inspections of Plaintiffs' books in inventory in Amazon's custody, as well as in the custody of the responsive defendants themselves.  *Id.*  Plaintiffs inspected more than 2,500 books and found over 75% to be counterfeit.  *Id.*

Both temporary restraining orders and preliminary injunctions require Plaintiffs to establish: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) that they are "likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [their] favor" ("decidedly" so where there are "serious questions going to the merits"); and (4) the "'public interest would not be disserved' by the issuance of a preliminary injunction."  *Salinger v. Colting,* 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted); *see also Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 145 (2d Cir. 2003).  The "'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction."  *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010).

---

[9] *See* Mustico Decl. ¶ 8, Exs. 1-7.

A plaintiff need not show that there is a likelihood of success on the merits of all of their claims for relief.  Rather, they must show a likelihood of success on the merits of at least one of their claims.  *Yurman Design Inc. v. Chaindom Enters.,* No. 99 Civ. 9307 (JFK), 1999 WL 1075942, 1999 U.S. Dist. LEXIS 18382, at *14 (S.D.N.Y. Nov. 29, 1999) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims.") (internal citations omitted); *Westchester Legal Services*, *Inc*. *v*. *County of Westchester*, 607 F. Supp. 1379, 1382 (S.D.N.Y. 1985) (same).  In this case, however, Plaintiffs are likely to prevail on all their claims for copyright and trademark infringement and counterfeiting.

## A.   Plaintiffs are Likely to Succeed on All Their Claims Against Defendants.

### 1.   Copyright Infringement.

There is no question that Defendants are infringing Plaintiffs' copyrights.  The Copyright Act provides, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ."  17 U.S.C. § 501.  "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).  The word "copying" means an infringement of any of the copyright holder's exclusive rights in its original work, including the reproduction and distribution rights.  *Arista Records LLC v. Doe*, 604 F.3d 110, 117 (2d Cir. 2010) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th. Cir. 2001)); 17 U.S.C. § 106.

Plaintiffs are owners or holders of the exclusive rights under copyright for each of the textbooks set forth on Exhibit B of the Complaint.  Compl. ¶ 39; Publishers' Decl. ¶ 5.  Defendants, without permission from Plaintiffs, have distributed unauthorized copies of the Authentic Works.  Compl. ¶¶ 59, 79; Publishers' Decl. ¶¶ 7, 9.  Through purchases, Plaintiffs have confirmed that

Defendants deliver unauthorized physical copies of Plaintiffs' copyrighted works.  Compl. ¶ 59;
Seymour Decl. ¶¶ 14-20; Publishers' Decl. ¶ 8.  The Authentic Works listed on Exhibit B, which
Defendants have infringed as outlined above, are protected by valid registration.[10]  Compl. ¶ 39,
Ex. B; Publishers' Decl. ¶ 5.

### 2.    Trademark Counterfeiting.

To prevail in a trademark counterfeiting or infringement action under 15 U.S.C. § 1114(1),
a plaintiff must show: (1) it has a valid mark that is entitled to protection under the Lanham Act,
(2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of
goods or services, (5) without the plaintiff's consent, and (6) the defendant's use of the plaintiff's
mark is likely to cause confusion as to the affiliation, connection, or association of defendant with
plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods, services, or
commercial activities by plaintiff.  *1-800 Contacts, Inc. v. WhenU.com, Inc.,* 414 F.3d 400, 406-
07 (2d Cir. 2005); *see also Time, Inc. v. Petersen Publ'g Co.,* 173 F.3d 113, 117 (2d Cir. 1999).

Although courts typically apply the eight-factor *Polaroid* test to determine whether there
is a likelihood of confusion between the marks (*Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d
492, 495 (2d Cir. 1961)), "where counterfeit marks are involved, it is not necessary to perform the
step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently
confusing."  *Fendi Adele S.R.L. v. Filene's Basement, Inc.,* 696 F. Supp. 2d 368, 383 (S.D.N.Y.

---

[10] Copyright automatically inheres upon the work's creation.  *See* 17 U.S.C. § 102(a) ("Copyright
protection subsists, in accordance with this title, in original works of authorship fixed in any
tangible medium of expression . . . .").  Registration with the United States Copyright Office is not
required to obtain copyright protection.  *See* 17 U.S.C. § 408(a) ("At any time during the
subsistence of [the copyright], the owner of copyright or of any exclusive right in the work may
obtain registration of the copyright . . . .  Such a registration is not a condition of copyright
protection.").  However, the Copyright Act provides that "no civil action for infringement of the
copyright in any United States work shall be instituted until . . . registration of the copyright claim
has been made in accordance with this title."  17 U.S.C. § 411(a).  A copyright registration also
creates certain benefits.  *See, e.g.,* 17 U.S.C. § 410(c) (providing that a certificate of copyright
registration creates a *prima facie* case that the copyright is valid).

2010) (quoting *Burberry Ltd. v. Euro Moda, Inc.,* No. 08-Civ.-5781 (CM), 2009 WL 1675080, 2009 U.S. Dist. LEXIS 53250, at *5 (S.D.N.Y. June 10, 2009); *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,* 378 F. Supp. 2d 448, 454-55 (S.D.N.Y. 2005)).

Here, Plaintiffs own registered trademarks that they place on their textbooks.  Compl. ¶ 40; Publishers' Decl. ¶ 6.  In connection with advertising, promoting, selling and otherwise distributing the Counterfeit Textbooks, Defendants have used Plaintiffs' registered trademarks listed on Exhibit C in commerce without authorization.  Compl. ¶ 85; Publishers' Decl. ¶¶ 7, 9.  Defendants have not been given permission to distribute unauthorized copies of Plaintiffs' copyrighted textbooks, or to use Plaintiffs' trademarks.  Publishers' Decl. ¶ 9.  In this case, since the marks being used are counterfeit,[11] Plaintiffs need not demonstrate any likelihood of confusion.  Based on the foregoing, Plaintiffs are likely to succeed on the merits of their trademark claim.

**B.     Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant Immediate Relief.**

Counterfeiters, like Defendants, are inundating the market with unauthorized copies of Plaintiffs' Authentic Works.   Defendants' illicit activities are causing irreparable harm to Plaintiffs.  Defendants' intentional and deceitful misconduct has resulted in lost profits to Plaintiffs and has damaged the inherent value of Plaintiffs' Authentic Works and Marks, impaired Plaintiffs' reputations for providing high-quality higher education textbooks, diluted Plaintiffs' brands and the goodwill associated with them, all of which negatively affects Plaintiffs' relationships with students, authors, distributors, and other partners.  Comp. ¶¶ 37, 75; Publishers' Decl. ¶ 12.

Defendants operate a business predicated upon blatant and extensive infringement of Plaintiffs' and others' copyrights and trademarks.  Absent an injunction, Defendants will no doubt

---

[11] A counterfeit mark is defined as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

continue infringing.

Irreparable injury in copyright suits can be harm that "occurs to the parties' legal interests" and that "cannot be remedied after a final adjudication." *Salinger*, 607 F.3d at 81 (footnote omitted).  Harm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss. *Id.*  Types of irreparable harm may include threats of "market confusion," loss of goodwill, or facing the "notoriously difficult" prospect of proving loss of sales. *See id.*  Although courts may not "presume irreparable harm," *id.* at 82, courts have consistently found that "[h]arm can be irreparable, and adequate remedies at law lacking, where . . . absent an injunction, the defendant is likely to continue infringing the copyright," *Broad. Music, Inc. v. PAMDH Enters., Inc*., No. 13-Civ.-2255 (KMW), 2014 WL 2781846, 2014 U.S. Dist. LEXIS 84409, at *13-14 (S.D.N.Y. June 19, 2014); *see also Complex Sys., Inc. v. ABN Amro Bank N.V.,* No. 08-Civ-7497 (KBF), 2014 WL 1883474, 2014 U.S. Dist. LEXIS 64467, at *36 (S.D.N.Y. May 9, 2014); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.,* 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011).

Plaintiffs will suffer irreparable harm unless this Court issues a temporary restraining order and preliminary injunction pending the resolution of this case.  First and foremost, the relief Plaintiffs seek is necessary to halt Defendants' distribution of counterfeit copies of the Authentic Works.  Mustico Decl. ¶ 7.  Defendants either deliberately engage in the sale of counterfeits or, alternatively, are unwilling or unable to determine whether the books they sell are counterfeit or legitimate. *Id.*  Accordingly, absent the requested relief, the infringement will continue.  Mustico Decl. ¶ 7  Plaintiffs will lose control over the exercise of their exclusive rights, the reputation of their brands, and also suffer an indeterminable amount of harm through sales lost to counterfeits. *Id.*  Moreover, the evidence of the counterfeits for use in this case will be lost forever. *Id.*  Second,

Plaintiffs are uniquely positioned to identify whatever counterfeits are currently within Defendants' inventory. *Id.* After catching Defendants selling counterfeits, Plaintiffs should not have to rely upon Defendants to identify, and halt the sale of, additional counterfeits. *Id.* Inevitably, that will be insufficient. *Id.* Third, Defendants, who operate online and through anonymous Storefronts, can easily liquidate or move their assets beyond the reach of this Court, effectively preventing Plaintiffs from recovering the monetary or equitable relief they seek. *Id.* Finally, Defendants' infringement does not consist of isolated incidents. *Id.* Plaintiffs' purchases show that each Storefront has sold counterfeit copies of at least three or more different textbook titles. *Id.* These facts easily warrant preliminary injunctive relief.

### C.     Plaintiffs Satisfy the Remaining Two Equitable Factors.

The remaining two factors also support injunctive relief.  In terms of the balance of hardships, "it is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585, 185 L. Ed. 2d 607 (2013) (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011)); *see also North Face Apparel Corp. v. Moler*, No. 12-Civ-6688 (JGK) (GWG), 2015 WL 4385626, 2015 U.S. Dist. LEXIS 93133, at *24 (S.D.N.Y. July 16, 2015) (enjoining sellers of counterfeit goods).  Further, injunctive relief serves the public interest.  It is a premise of copyright law that "the public has a compelling interest in protecting copyright owners' marketable rights to their work." *WPIX*, 691 F.3d at 287.  "Inadequate protections for copyright owners can threaten the very store of knowledge to be accessed; encouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works." *Id.*  The public interest is also served by an injunction to prevent Defendants' use of Plaintiffs' Marks in connection with the Counterfeit Books because it ensures that the public is not deceived.  *See Laboratorios Rivasm, SRL v. Ugly & Beauty, Inc.,* No. 11-Civ-5980 (RA) (JLC),

2013 WL 5977440, 2013 U.S. Dist. LEXIS 161188, *42 (S.D.N.Y. Nov. 12, 2013) ("[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality").  Here, the public, and in particular students, have an interest in being able to rely on the quality and content of the higher education textbooks bearing Plaintiffs' Marks and accordingly, the fourth factor, like the others, favors injunctive relief.

The above facts demonstrate that injunctive relief enjoining Defendants from further infringing Plaintiffs' copyrights and trademarks is warranted and necessary to protect Plaintiffs from further infringement of their copyrights and trademarks.

## III.   PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE TRANSFER OF DEFENDANTS' ASSETS

It is well settled that a federal district court may issue injunctive relief to preserve assets as security for a potential monetary judgment and to preserve a plaintiff's ability to recover equitable relief.  An injunction restraining assets is clearly warranted in this case.

### A.   The Court Possesses Ample Authority Under the Federal Rules and Its Inherent Equitable Powers to Attach Defendants' Assets.

The Court has authority to grant the requested relief under the Federal Rules of Civil Procedure.  The Court may freeze Defendants' assets for a potential judgment by issuing a preliminary injunction under Rule 65.  S*ee, e.g., Republic of Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir. 1986) (preventing transfer or encumbrance of properties that would place them beyond reach or prevent their reconveyance); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.,* 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) ("Preliminary injunctions are . . . appropriate to thwart a defendant from making a judgment uncollectible."); *Mason Tenders Dist. Council Pension Fund v. Messera,* No. 95-Civ.-9341 (RWS), 1997 WL

223077, 1997 U.S. Dist. LEXIS 5931, at *13 (S.D.N.Y. May 1, 1997) ("[T]he United States Supreme Court and the Second Circuit have made Rule 65 available to secure assets for the ultimate judgment."); *cf. In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985) ("[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring their] assets . . . .") (quotations and citations omitted).

Similarly, independent of its authority under the Federal Rules of Civil Procedure, the Court also has a "great deal of discretion" in "fashioning a remedy pursuant to its inherent equitable powers." *Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC*, 587 F. Supp. 2d 548, 570 (S.D.N.Y. 2008). "[A] preliminary asset freeze is authorized by the district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief. Where profits are available as a final remedy—as they are under 17 U.S.C. § 504—a preliminary asset freeze is an appropriate provisional remedy." *Lions Gate Films, Inc. v. Doe*, No. 2:14-cv-6033 (MMM), 2014 WL 3895240, 2014 U.S. Dist. LEXIS 110032, at *16-17 (C.D. Cal. Aug. 18, 2014) (internal quotations and citations omitted). Here, Plaintiffs seek an equitable accounting and disgorgement of Defendants' illicit profits under the Copyright Act. Thus, the Court may exercise its equitable authority to preserve the status quo and maintain its ability to provide an equitable remedy. *See Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-4500 (CRB), 2012 WL 4068624, 2012 U.S. Dist. LEXIS 131711, at *11 (N.D. Cal. Sept. 14, 2012).[12]

---

[12] The Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999) does not divest this Court of its equitable authority to freeze assets. In *Grupo Mexicano*, the Supreme Court held that the "District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." *Id.* at 333. The Supreme Court, however, made a critical distinction between general, unsecured creditors and those, like Plaintiffs, possessing equitable interests in the property at issue and seeking equitable relief. *Id.* at 324-26. Indeed, the Second Circuit recently ruled that courts maintain their equitable power to issue a

In terms of the equitable factors, Plaintiffs have already shown that they are likely to succeed on the merits. *See supra* Section II.A.  Moreover, irreparable harm exists where "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999).  Accordingly, a demonstration of a defendant's "intent to frustrate any judgment on the merits" qualifies as a showing of "irreparable harm."  *Sea Carriers Corp. v. Empire Programs, Inc.,* No. 04-Civ.-7395 (RWS), 2006 WL 3354139, 2006 U.S. Dist. LEXIS 83843, at *12-13 (S.D.N.Y. Nov. 20, 2006); *see also Algonquin Power Corp., Inc. v. Trafalgar Power Inc.,* No. 5:00-CV-1246 (NPM/DEP), 2000 WL 33963085, 2000 U.S. Dist. LEXIS 20331, at *57 (N.D.N.Y. Nov. 8, 2000) ("[D]emonstration of intent to frustrate a judgment will be found to satisfy the requirement of a showing of irreparable harm.") (citing *Signal Capital Corp. v. Frank,* 895 F. Supp. 62, 64 (S.D.N.Y.1995)); *Motorola,* 2009 WL 1362833, 2009 U.S. Dist. LEXIS 40660, at *12-13 ("[A] plaintiff's showing that a defendant's actions are likely to render a judgment uncollectible qualifies as a showing of irreparable harm."); *Experience Hendrix, LLC v. Chalpin,* 461 F. Supp. 2d 165, 169-70 (S.D.N.Y. 2006) (finding

---

prejudgment asset freeze "where such relief was traditionally available: where the plaintiff is pursuing a claim for final equitable relief and the preliminary injunction is ancillary to the final relief." *Gucci Am., Inc. v. Bank of China,* 768 F.3d 122, 131 (2d Cir. 2014) (citing *Grupo Mexicano,* 527 U.S. at 319, and *De Beers Consol. Mines v. United States,* 325 U.S. 212, 219-20 (1945)).  "[C]ourts since *Grupo Mexicano* have found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets." *Quantum,* 144 F. Supp. 2d at 250 n.9; *see also In re Comverse Tech., Inc.,* No. 06-CV-1849 (NGG) (RER), 2006 WL 2568461, 2006 U.S. Dist. LEXIS 62227, at *7 (E.D.N.Y. Aug. 31, 2006) ("[Plaintiffs'] claims are equitable in nature, and therefore an injunction seizing the . . . Defendants' assets derived from their alleged wrongful conduct may be proper."); *Motorola, Inc. v. Abeckaser,* No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833, 2009 U.S. Dist. LEXIS 40660, at *13 n.4 (E.D.N.Y. May 14, 2009) (finding that *Grupo Mexicano* is "distinguishable" from "an action to recover damages for willful violations of the trademark provisions of the Lanham Act"); *Adelphia Comm'ns Corp. v. Rigas,* No. 02-Civ.-8495 (GBD), 2003 WL 21297258, 2003 U.S. Dist. LEXIS 9349, at *14 (S.D.N.Y. June 4, 2003) (distinguishing case where "plaintiff here seeks not only money damages, but also equitable relief").

irreparable injury showing satisfied where "there is substantial reason to believe that defendants, unless enjoined, will continue to attempt to frustrate plaintiff's efforts to collect the judgment").

Here, circumstances overwhelmingly evidence Defendants' intent to frustrate the enforcement of a judgment. Defendants deliberately set up businesses that sell counterfeits. In the course of their illicit sales, Defendants hide their identities and locations, as is typical of counterfeiters. *See* Compl. ¶¶ 55, 63; Seymour Decl. ¶ 22; Mustico Decl. ¶ 12. They are not legitimate businesses, which typically have readily identifiable assets that may be used to satisfy judgments. Rather, given their aggressive infringement, there is a strong chance they may drain or move accounts in an effort to be "judgment proof." *cf. Microsoft Corp. v. Jun Yan*, No. 3:10-cv-162 (VLB), 2010 U.S. Dist. LEXIS 14934, at *7 (D. Conn. Feb. 18, 2010) (granting temporary restraining order and preliminary injunction freezing assets where defendants operated online piracy operation and used multiple and false contact information to frustrate detection and avoid compliance with copyright laws); *Elsevier, Inc. v. Does 1-10*, No. 16-Civ.-1245 (RA), Ex Parte Order (Feb. 2, 2016) (Dkt. No. 13) (finding that use of aliases, among other measures, to operate their allegedly infringing enterprise demonstrates the likelihood that, if Defendants were to receive advance notice of the application for an injunction, "Defendants could moot Plaintiffs' ultimate relief by moving their assets beyond the reach of the Court").

Finally, the balance of hardships and public policy considerations decidedly favor Plaintiffs. A "judgment of some amount" is more than "likely to be entered in plaintiff's favor, and plaintiff bears a significant risk that defendant's assets will prove inadequate to satisfy such a judgment." *Serio v. Black, Davis & Shue Agency, Inc.,* No. 05-Civ.-15 (MHD), 2005 WL 3642217, 2005 U.S. Dist. LEXIS 39018, at *61 (S.D.N.Y. Dec. 30, 2005). "Without an injunction," Plaintiffs "would suffer a hardship" because they are at risk of "not be[ing] paid

33

monies that . . . are justly due and owed" as compensation for the myriad harms Defendants' illegal conduct has caused them.  *Quantum,* 144 F. Supp. 2d at 249 (finding the "balance of hardships also tips decidedly in" Plaintiffs' favor).  On the other hand, Defendants will suffer no cognizable hardship.  Defendants have no right to use the profits of an illegal enterprise to continue supporting their unlawful activities or for personal uses.  There is no conceivable public interest in allowing Defendants to continue causing and profiting from egregious infringement.

### B.   The Court Also Possesses Authority Under New York Law to Attach the Defendants' Assets.

In addition to the federal rules and its equitable powers, this Court may also act pursuant to New York law.  Rule 64 of the Federal Rules of Civil Procedure provides, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Fed. R. Civ. P. 64.  New York law provides that a plaintiff is entitled to prejudgment attachment if it can show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in Section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  N.Y. C.P.L.R. § 6212(a).

As discussed above, Plaintiffs have a cause of action and it is probable—indeed overwhelmingly likely—that Plaintiffs will succeed on the merits.[13]  *See supra* Section II.A. Based on the 98 copyrighted Authentic Works identified on Exhibit B and the nine Marks

---

[13] To show a probability of success on the merits for purposes of an application for an order of attachment, a plaintiff must present facts sufficient to establish a *prima facie* case.  *See Considar, Inc. v. Redi Corp., Establishment*, 238 A.D.2d 111, 111, 655 N.Y.S.2d 40, 41 (N.Y. App. Div. 1997).  "Although evidentiary facts making out a *prima facie* case must be shown, plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated."  *Id.*  (citation omitted).

identified on Exhibit C, Plaintiffs are entitled to between $73,500 and $14,700,000 in statutory damages as a result of Defendants' copyright infringement, and between $9,000 and $18,000,000 in statutory damages for Defendants' trademark infringement and counterfeiting. *See* 17 U.S.C. § 504(c) (providing for statutory damages of not less than $750 per infringed work and up to $150,000 per work for willful infringement); 15 U.S.C. § 1117(c) (providing for statutory damages of not less than $1,000 per infringed mark and up to $2,000,000 per mark for willful infringement). As Defendants have no known counterclaims against Plaintiffs, Publishers' Decl. ¶ 15, the requirement that the amount demanded exceeds all known counterclaims is also met.  Thus, the only remaining element is whether one or more grounds for attachment provided in Section 6201 exist.

Sections 6201(1) of the CPLR provides grounds for an attachment in this case.  Section 6201(1) provides for attachment where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." N.Y. C.P.L.R. § 6201(1).  Here, none of Defendants appear to be domiciled or reside in New York, with the exception of Miriam Garner and her entity, Wize Dealz, LLC.  *See* Compl. ¶¶ 10-30.  Furthermore, all Defendants run an illegal business and go to great lengths to do so anonymously. *See* Compl. ¶¶ 10-30, 63-64; Seymour Decl. ¶¶ 21-22.  Once given notice, Defendants can be expected to render much more difficult even partial satisfaction of any judgment.  Thus, attachment here is appropriate under CPLR §§ 6201(1). *See ITC Entm't, Ltd. v. Nelson Film Partners,* 714 F.2d 217, 221-22 (2d Cir. 1983) (upholding an order of attachment under § 6201(1) based on sporadic contacts with New York, insufficient assets to satisfy the potential judgment, and questionable business practices); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting plaintiff's motion for prejudgment attachment under CPLR 6201 where defendants are "foreign

individuals and corporations who have both incentive and capacity to hide their assets"); *Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F. Supp. 428, 432 (S.D.N.Y. 1989) (finding attachment under CPLR § 6201(1) appropriate where plaintiff sought to attach defendant's bank account, because "[t]hese accounts, by nature are liquid and can be easily transferred from the jurisdiction by a simple telephone call"); *cf. JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 487 (S.D.N.Y. 2004) ("Because direct evidence of an intent to defraud or to frustrate the enforcement of a judgment is rare, the intent required under C.P.L.R. § 6201(3) is usually inferred from the circumstances.").

C.      *Ex Parte* **Relief Is Warranted.**

Plaintiffs have brought a number of cases involving nearly identical facts over the last several years and have repeatedly experienced defendants (all operators of similar online storefronts) violate preliminary injunctions freezing their assets and inventory of Plaintiffs' textbooks. *See* Mustico Decl. ¶ 8, 15; *see also, e.g.,* Endorsed Order, *Pearson Educ., Inc. v. Heliosbooks, Inc.*, No. 1:17-cv-203-DAB, ECF No. 96 (granting additional expedited discovery into multiple defendants' spoliation of restrained inventory).

If Defendants receive advance notice of the temporary restraining order attaching Defendants' assets, Defendants will have the opportunity to moot Plaintiffs' ultimate relief simply by moving their assets and inventory beyond the reach of this Court. Accordingly, based on the circumstances of this case, Defendants' assets associated with their illegal activities and inventory of Plaintiffs' textbooks should be temporarily restrained or attached on an *ex parte* basis. Mustico Decl. ¶ 6, 16. This Court has the authority to proceed in this fashion.

Rule 65 of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without written or oral notice if, by affidavit or verified complaint, Plaintiffs show that "immediate and irreparable injury, loss, or damage will result … before the adverse party can

36

be heard in opposition . . . ."  Fed. R. Civ. P. 65(b); *see also U2 Home Entm't, Inc. v. Bowery Music City, Inc.,* No. 03-Civ.-8909 (RJH), 2003 WL 22889738, 2003 U.S. Dist. LEXIS 21992, at *3-4 (S.D.N.Y. Dec. 8, 2003).  New York law similarly authorizes the Court to enter a temporary order of attachment without notice.  Section 6210 of the CPLR provides, "Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee as provided in subdivision (b) of section 6214."  N.Y. C.P.L.R. § 6210; *see also Libancell S.A.L. v. Republic of Leb.*, No. 06-Civ.-2765 (HB), 2006 WL 1321328, 2006 U.S. Dist. LEXIS 29442, at *5-6 (S.D.N.Y. May 16, 2006) ("New York allows for the entry of an *ex parte* temporary restraining order pending the outcome of a motion on notice for an order of attachment.").

### D.    The Court Should Require No Bond or, in the Alternative, a Minimal Bond.

It is well established in the Second Circuit that Rule 65(c) invests the district court wide discretion as to the amount of security required, if any.  *See Doctor's Assocs. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997).  In particular, the court may "dispense with the bond requirement 'where there has been no proof of likelihood of harm.'"  *See id.* (quoting *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)); *see also DeWitt Stern Group, Inc. v. Eisenberg,* No. 13-Civ.-3060 (RWS), 2013 WL 2420835, 2013 U.S. Dist. LEXIS 78598, at *16 (S.D.N.Y. June 4, 2013) (finding bond requirement unnecessary).

Plaintiffs respectfully submit that the Court should exercise its discretion to dispense with the filing of a bond in this case.  As discussed above, there is no realistic likelihood of harm to Defendants in this case because there is no evidence that Plaintiffs' requested injunction will cause harm, as opposed to stopping Defendants' unlawful conduct.  Furthermore, Plaintiffs and their counsel regularly appear in this Court to enforce their intellectual property rights and there can be no legitimate concern that Plaintiffs will not have the means or be willing to address any issues for

which a bond would be necessary.

Furthermore, Plaintiffs and their counsel regularly appear in this Court to enforce their intellectual property rights.  Plaintiffs would not jeopardize their ongoing enforcement efforts by failing to remedy any issues that could arise for which a bond would be necessary.

## IV.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY

Plaintiffs seek an order authorizing limited discovery targeted at identifying and locating Defendants, identifying Defendants' assets that are the proper subject of any injunction issued, and identifying Defendants' inventory of Plaintiffs' textbooks and inspecting such inventory for counterfeits.  While discovery generally must await the parties' Rule 26(f) conference, the Court can order otherwise.  Fed. R. Civ. P. 26(d)(1).  Here, Plaintiffs seek the ability to inspect Defendants' inventory of Plaintiffs' textbooks in order to prevent Defendants from injecting any additional counterfeits of Plaintiffs' textbooks into the market, and in order to assist Defendants in complying with the injunction.  Plaintiffs' proposed order lays out a process by which Plaintiffs can quickly inspect Defendants' inventory and release to Defendants any books determined to be authentic.  Plaintiffs' request for expedited discovery is also aimed at reviewing the evidence available for a preliminary injunction hearing and preventing Defendants from frustrating Plaintiffs' ability to obtain the appropriate equitable and monetary relief to which they are entitled.

Courts in this district apply a "flexible standard of reasonableness and good cause" to determine whether to grant a motion for expedited discovery prior to a Rule 26(f) conference. *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)).  In *Stern v. Cosby*, then-District Judge Chin explained that this District's flexible standard of "reasonableness" and "good cause" allows for review of an application to proceed on an expedited basis under what "is reasonable in light of

all the circumstances."  246 F.R.D. 453, 457 (S.D.N.Y. 2007) (citing cases).

Expedited discovery "is routinely granted in actions involving infringement and unfair competition."  *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97-Civ.-3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y. Oct. 14, 1997) (citing cases); *see also Arista Records v. Doe*, 604 F.3d at 117-24 (affirming denial of motion to quash subpoena served on ISP to disclose identities of Internet users allegedly committing copyright infringement); *Living Scriptures, Inc. v. Doe*, No. 1:10-cv-0182 (DB), 2010 WL 4687679, 2010 U.S. Dist. LEXIS 119968, at *4 (D. Utah Nov. 10, 2010) (granting *ex parte* motion for expedited discovery from PayPal in copyright infringement case).  As described below, Plaintiffs' limited requests satisfy the flexible standard of reasonableness and good cause.

Plaintiffs do not seek any testimony or interrogatory answers on an expedited basis. Rather, the proposed expedited discovery is narrow in scope in that, if the Court grants Plaintiffs' request, Plaintiffs would pursue the expedited discovery to: (1) identify the names and related contact and financial account information associated with Defendants' Storefronts; and (2) inspect copies of Plaintiffs' textbooks in Defendants' inventory.

As to the first request, without the ability to discover the true names and locations of Defendants, Plaintiffs cannot name and serve the proper defendants and will be unable to litigate their claims.  There is simply no other means for Plaintiffs to ascertain Defendants' true identities without the requested discovery.  Moreover, any asset restraint the Court orders will have no effect unless Plaintiffs are able to identify the accounts containing assets associated with Defendants' Storefronts.  Accordingly, Plaintiffs have a substantial need for the discovery.

As to the second request, Defendants must not be allowed to introduce additional counterfeits into the marketplace.  In addition, whether disingenuous or not, Defendants are likely

to say that they did not know the books they sold are counterfeit.  Mustico Decl. ¶ 11.  Assuming any such statement to be true, this would put Defendants in the impossible position of not knowing which books are counterfeit and, therefore, subject to injunction.  *Id.*  Because Plaintiffs are best positioned to identify whatever counterfeits are currently in Defendants' inventory, Plaintiffs propose a process by which Plaintiffs can inspect Defendants' inventory expeditiously.  The requested inspection will assist Plaintiffs in removing counterfeits from the marketplace, while allowing Defendants to continue their businesses, and sell legitimate textbooks.  Mustico Decl. ¶ 11.  The inspection will also provide a more complete record to the Court in connection with its decision on a preliminary injunction.

Defendants' illegal activities occur predominantly behind closed doors and Plaintiffs will be hard-pressed to build a more complete record for preliminary injunctive relief in the absence of such discovery.  *Twentieth Century Fox Film Corp. v. MOW Trading Corp.,* 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery in infringement action because "[i]nquiry . . . on an expedited basis may very well lead to evidence of continuing infringement by this defendant or others; it may also lead to the discovery of future plans to infringe or the discovery of other infringing merchandise"); *Warner Bros. Records, Inc. v. Payne,* No. W-06-CA-051, 2006 WL 2844415, 2006 U.S. Dist. LEXIS 65765, at *10 (W.D. Tex. July 17, 2006) ("[P]iracy typically takes place behind closed doors and beyond the watchful eyes of a copyright holder.").

Moreover, because Defendants' sale of textbooks is ongoing, it is safe to conclude that the books Plaintiffs seek to inspect could likely evade merits discovery and disappear into the marketplace.  A similar situation arose in *Pod-Ners, LLC v. N. Feed & Bean of Lucerne LLC*, where the plaintiff claimed that the defendants infringed its rights in a certain variety of field beans. 204 F.R.D. 675, 675-76 (D. Colo. 2002).  After noting that "[g]ood cause [for expedited discovery]

frequently exists in cases involving claims of infringement and unfair competition," *id.* at 676 (citing *Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268, 1269 (S.D.N.Y. 1994)), the court allowed the plaintiff expedited access to, among other things, beans and bean plants in the defendants' possession, on grounds that "[t]he beans at issue are commodities and subject to sale, resale, and consumption or use with the passage of time," *id.* at 676.  *See also Elite Licensing, Inc. v. Thomas Plastics, Inc.*, 250 F. Supp. 2d 372, 381 (S.D.N.Y. 2003) (granting plaintiff's application for expedited discovery, allowing plaintiff to inspect the allegedly infringing products); *Twentieth Century Fox.*, 749 F. Supp. at 475 (permitting expedited discovery to identify the sources and quantity of infringing merchandise because such discovery may lead to "evidence of continuing infringement by this defendant or others" as well as the "discovery of future plans to infringe or the discovery of additional infringing merchandise").

Similarly, in *Dell Inc. v. BelgiumDomains, LLC*, after noting that conditions warranting expedited discovery frequently exist where a well-known trademark has been counterfeited and the sources or purchasers of the counterfeit products are unknown to plaintiff, the court granted plaintiffs expedited discovery to serve subpoenas on multiple third parties in order to identify defendants and learn the scope of their operations.   No. 07-22674 CIV-JORDAN, 2007 WL 6862341, 2007 U.S. Dist. LEXIS 98651, at *28-29 (S.D. Fla. Nov. 21, 2007); *see also TracFone Wireless, Inc. v. Holden Prop. Servs., LLC*, 299 F.R.D. 692, 694 (S.D. Fla. 2014) (finding good cause to grant plaintiff expedited discovery to serve subpoenas on Amazon and other third-parties in order to learn the full extent of the nature and scope of defendants' alleged ongoing trademark infringement and other unlawful conduct).  Similar conditions warranting relief are present in this case.

Accordingly, Plaintiffs meet all the factors for immediate, limited discovery to identify

41

Defendants, including their names, aliases, contact information, and financial account information related to their illegal activity, and inspect Defendants' inventory of Plaintiffs' textbooks.

## V.   ALTERNATE SERVICE BY ELECTRONIC MEANS IS APPROPRIATE HERE

Plaintiffs respectfully ask that the Court grant them permission to serve the Doe and corporate Defendants by email to such Defendants' email addresses identified by the Online Marketplaces (in response to expedited discovery) as associated with or utilized by Defendants to conduct the business of Defendants' Storefronts.  The Court may authorize alternate service under the applicable federal and New York rules.  If any Defendant is located in the United States, New York's service of process rules apply.  Alternately, if Defendants are located outside the United States, Federal Rule of Civil Procedure 4(f) applies.  Applying either New York law for individuals in the United States or Federal Rule 4(f) for individuals abroad, alternate service, particularly service by email, is available here and within the Court's discretion.

Though Defendants have hidden behind the anonymity of their Storefronts, there is no doubt that Defendants regularly use email for purposes of operating their online business. Defendants use email in connection with the Storefronts, to register their accounts on the Online Marketplaces, and to communicate with the Online Marketplaces and their customers regarding orders received, marketplace fees, payments, and refunds, among other things.  Mustico Decl. ¶ 12.  Accordingly, email appears to be the best method of providing Defendants with actual notice of this suit.  Under these circumstances, service of process by email is appropriate.

Plaintiffs also ask that the Court allow sufficient time for the Online Marketplaces and any financial institutions holding accounts associated with Defendants' Storefronts to comply with the temporary restraining order before requiring that Defendants be given notice of the order and this case.  In Plaintiffs' experience, it typically takes Online Marketplaces at least two to three days to

locate, attach, and freeze the online storefronts and provide identifying information and then an additional one to two weeks for the financial institutions to locate, attach, and freeze accounts associated with online storefronts.  Mustico Decl. ¶ 16.

A.      **CPLR § 308 Authorizes Alternate Service on Individuals in the United States.**

Section 308(5) of the CPLR provides for service "in such a manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section."  Paragraphs one, two, and four of § 308 all require that a plaintiff know the whereabouts or home or business address of a defendant.  Thus, service via § 308(1), (2), or (4) is impracticable in this case, and the Court may order service of process via an alternate method, including by email.  Courts in New York have authorized service of process by email where, as here, service by traditional methods was impracticable.  *See, e.g. Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-04 (N.Y. App. Div. 2013) ("[B]oth New York courts and federal courts have, upon application by plaintiffs, authorized [e]mail service of process as an appropriate alternative method when the statutory methods have proven ineffective.") (citing *Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L.*, 910 N.Y.S.2d 418, 422 (N.Y. App. Div. 2010)); *Snyder v. Energy, Inc.*, 857 N.Y.S.2d 442, 449 (N.Y. Civ. Ct. 2007) (authorizing service by email of defendant corporation and its president under § 308(5) and § 311(b) where service by traditional means proved impracticable); *Bomb First Prods., LLC v. Hustla, Inc.*, No. 651753/2012, 2014 N.Y. Misc. LEXIS 5928, at *1 (N.Y. Sup. Ct. June 24, 2014) (granting motion to permit alternative service by email pursuant to § 308(5) and § 311(b)).

B.      **Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country.**

Federal Rule of Civil Procedure 4(f)(3) allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as

the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); *see also RSM Prod. Corp. v. Fridman*, No. 06-Civ.-11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) ("The decision of whether to allow alternative methods of serving process . . . is committed to the sound discretion of the district court.") (citation and internal quotation marks omitted).

Alternate service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." *FTC v. PCCare247 Inc.*, No. 12-Civ.-7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)); *see also See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013).  Indeed, a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service under Rule 4(f)(3).  *Rio Props.*, 284 F.3d at 1014-15; *PCCare247*, 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *8.  Alternative service of process by email is proper where, as here, the proposed method of service is not prohibited by international agreement and the nature of the defendants' business makes it the most likely method of service to provide prompt, actual notice of the plaintiffs' claims.  *See Rio Props.*, 284 F.3d at 1018 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process").

1. **Service of Process by Email is Not Prohibited by International Agreement.**

As discussed above, the Doe Defendants' true names and locations are unknown because Defendants have chosen to conduct their business, and their infringing activities, anonymously over the Internet.  The Hague Convention does not apply in cases such as this, where the address of the person to be served is not known.  Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known."); *see also Prediction Co. v. Rajgarhia*, No. 09-Civ.-7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist. LEXIS 26536, at *5 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention … because [defendant's] address is not known to [plaintiff]."); *Philip Morris,* 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *2 (email service authorized and the Hague Convention did not apply because, despite physical addresses having been provided to defendants' domain registrars, the actual addresses could not be confirmed as valid).

In the absence of an international agreement, the Court must look to Rule 4(f)(3), which allows alternative methods for service of process, so long as the method is directed by the Court and comports with constitutional notions of due process.  *See Rio Props.*, 284 F.3d at 1016; *PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *11; *Prediction Co*, 2010 U.S. Dist. LEXIS 26536, at *3.

2. **Service of Process by Email is Reasonably Calculated to Provide Notice to Defendants.**

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *8 (internal quotations and citation omitted).  "Such flexibility necessarily includes the utilization of modern communication

45

technologies to effect service when warranted by the facts." *Broadfoot v. Diaz*, 245 B.R. 713, 720 (Bankr. N.D. Ga. 2000).   As a result, courts have fashioned a range of alternative methods of service, including service by email.  *See, e.g., PCCare247,* 2013 U.S. Dist. LEXIS 31969, at *18-20 (ordering service by email and Facebook); *Prediction Co.*, 2010 U.S. Dist. LEXIS 26536, at *1-5 (ordering service by sending summons and complaint to an email address previously used by defendant to communicate with plaintiff and to counsel in New York who had been in contact with defendant); *Philip Morris*, 2007 U.S. Dist. LEXIS 19780, at *9-10 (ordering service by email and fax); *Williams v. Adver. Sex LLC*, 231 F.R.D. 483, 488 (N.D. W. Va. 2005) (ordering service by email and international registered and standard mail).

Email service on a defendant engaged in an illegal online business is appropriate and constitutionally acceptable in a case such as this where the plaintiff is unable to personally serve the defendant at a physical address and has shown that email is the most effective means of providing the defendant with notice of the action.  *See Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *9 (finding that service by email was appropriate where, as here, defendants "conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email"); *McCluskey v. Belford High Sch.*, No. 2:09-14345, 2010 WL 2696599, 2010 U.S. Dist. LEXIS 62608, at *9-10 (E.D. Mich. June 24, 2010) (concluding that service via email was appropriate where the defendants conducted their business online and relied on an email address to conduct their business); *Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-cv-14628, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874, at *7 (E.D. Mich. Feb. 14, 2013) (same; noting that the plaintiff's test email was not returned as undeliverable); *Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (holding that Rule 4(f)(3) clearly authorizes service by email where defendant's address was unknown and emails sent using the addresses

defendant provided to the domain name registrar did not bounce back).

"If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them."  *Williams*, 231 F.R.D. at 487 (quoting *Broadfoot*, 245 B.R. at 721).  Thus, email service has the greatest likelihood of reaching e-commerce merchants, particularly Defendants here who are adept at hiding their identity and location.  *See Broadfoot*, 245 B.R. at 722 (authorizing email and fax service and noting, "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules.  Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party.").

Accordingly, service on the Doe and corporate Defendants by email will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiffs' claims.  Email will not only be effective in this case, but will be the most reliable means of providing actual notice to Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the relief requested herein.

DATED:  August 15, 2018

Respectfully submitted,

By:  _____

Matthew J. Oppenheim
Kerry M. Mustico
Matthew I. Fleischman
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
Tel:  (202) 480-2999
Fax:  (866) 766-1678
matt@oandzlaw.com
kerry@oandzlaw.com
fleischman@oandzlaw.com

*Attorneys for Plaintiffs*

48